IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 32968-2-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| ERNEST GLASGOW BARELA, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, A.C.J. — Ernest Barela appeals his convictions for two

counts of second degree incest, one count of first degree child molestation, and two

counts of second degree child molestation. He argues the trial court erred in denying his

postjudgment motion for a new trial. He also asserts three other bases of error, and

argues cumulative error requires reversal. In affirming, we conclude the trial court did

not err in denying a new trial, and we reject Mr. Barela's other claims of error.

FACTS

When E.B. was six or seven years old, her father, Mr. Barela, went into her

bedroom and sat on her bed. He removed his shorts, placed E.B. on his lap, and hugged

her. For the next several years, Mr. Barela often touched E.B. inappropriately and in a

sexual manner. E.B. estimated the number of these inappropriate touchings was in the high hundreds. E.B. was unable to say whether actual penetration ever occurred. The last inappropriate touching occurred on April 9, 2012, when E.B. was 12 years old. That morning, Mr. Barela came into E.B.'s bedroom, undressed her, and put his penis between her thighs. After laying on top of E.B. for a few minutes, Mr. Barela pulled up his pants and left.

On April 11, 2012, E.B. was participating in youth group at a church in Yakima. After the church service had ended, E.B. approached one of the youth leaders, Sydney Mutch, and asked to speak to her in private. The two went into a side room, and E.B. told Ms. Mutch that her dad had been molesting her. Ms. Mutch went and got the pastor's wife, Miel Lindseth. Ms. Lindseth, Ms. Mutch, and E.B. then met in a side room and E.B. shared the information again. Ms. Mutch then went and got E.B.'s mother, Michelle Barela. E.B. and Mrs. Barela went into the side room, and E.B. told Mrs. Barela what had happened to her. After talking at the church, Mrs. Barela and E.B. drove home.

The next night, Mrs. Barela confronted Mr. Barela about E.B.'s allegations. Mrs. Barela told Mr. Barela about what E.B. had disclosed and Mr. Barela said, "I've been inappropriate with her." Report of Proceedings (RP) at 493. Mrs. Barela said, "How could you," and Mr. Barela then said, "There was no sex." RP at 494.

2

The next morning, Mrs. Barela took E.B. to the Yakima Police Department, where Detective Chad Janis from the special assault unit interviewed her.

The State charged Mr. Barela with first degree rape of a child, second degree rape of a child, first degree child molestation, two counts of second degree child molestation, two counts of first degree incest, and second degree incest.

Mr. Barela moved in limine to exclude testimony from Detective Janis regarding delayed reporting in child sex victims. The trial court ruled that it was appropriate for the State to present some testimony regarding delayed reporting.

Mr. Barela also moved to limit discussions during jury selection relating to delayed reporting. Mr. Barela asked the trial court to limit these types of questions to those necessary to uncover potential bias, and to exclude a "wholesale brainstorming session on that." RP at 49. The trial court reasoned it was appropriate for the State to be able to identify potential jurors who might or might not be receptive to the idea of delayed reporting. The trial court somewhat equivocally ruled, "I'm going to allow it, but I'm not, you know." RP at 53.

The State moved in limine to allow testimony from Ms. Mutch regarding E.B.'s disclosure under the "hue and cry" doctrine. Clerk's Papers (CP) at 26-28; RP at 77. The trial court granted the State's motion over Mr. Barela's objection.

3

During jury selection, the State asked the jury pool the following question:

What if that child, say, delayed in the time when some of the things happened to her and the time when the case got investigated? Would you hold that delay of disclosing of telling against her?

RP at 245. One juror responded that he or she would not, because "You hear about it all the time . . . between the churches and daycares and stuff where stuff comes up years later." RP at 245. Other jurors hypothesized about the possible reasons why a sexually abused child might delay reporting.

During the second round of voir dire, the State began questioning venire juror X. Venire Juror X stated he had previously been employed as a counselor at a long-term treatment facility for severely emotionally disturbed children and teens who had been physically and sexually abused. He stated he had worked there for nine years. The following exchange then occurred:

[Prosecutor]: And you heard me ask the question of other jurors regarding delay in disclosing abuse by a child.
[Venire Juror X]: Yes.
[Prosecutor]: Is that something that you ran across in your work?
[Venire Juror X]: Absolutely, yes.
[Prosecutor]: Did you find it common?
[Venire Juror X]: Yes.
[Prosecutor]: And, you know, it sounds like you've dealt with various serious cases.
[Venire Juror X]: Very, very serious cases, yes.
[Prosecutor]: Okay. Were some of those over the course of months, years?

4

> [Venire Juror X]: Days and weeks.
> [Prosecutor]: Days and week.
> [Venire Juror X]: Regularly and often.
> [Prosecutor]: Tough work?
> [Venire Juror X]: Yes, sir. That's why I'm no longer in it. Nine
> years was enough.

RP at 292-93.

Trial commenced, and the State called Ms. Mutch. Ms. Mutch testified that after youth group E.B. had asked to talk to her, and the two went into a storage room to talk. Ms. Mutch then testified E.B. "told me that her dad had been molesting her." RP at 364.

The State also called Mrs. Barela. Mrs. Barela testified about Mr. Barela's admission that he had been inappropriate with E.B. She also testified that her relationship with Mr. Barela had been rocky for a while. On cross-examination, Mrs. Barela agreed that she was not happy well before her children were born. Defense counsel then asked, "Because you had an affair within the first couple of years of your marriage, correct?" RP at 512. The State objected and the court sustained the objection. Defense counsel did not contest the court's ruling and moved on with another question.

The State also called E.B. E.B. testified that she told Ms. Mutch that her father had been sexually abusing her. She also testified that several weeks before disclosing the abuse to Ms. Mutch, she had told a friend at school. She testified that she had thought

5

about telling someone for a while but had a lot of internal conflict, and did not know what would happen or what people would think.

The State called Detective Janis. Detective Janis testified that he had specialized training in child abuse cases, specifically in interviewing child sex abuse victims. He testified he had conducted hundreds of these interviews. After Detective Janis testified about his interview with E.B., the State began questioning him on delayed disclosures. Detective Janis testified that a delayed disclosure is when a person delays reporting abuse, that a person can delay reporting anywhere from several days to years, and that a child might delay disclosing in an intrafamilial abuse case. Mr. Barela objected, arguing that E.B. testified regarding why she delayed reporting and Detective Janis's testimony was therefore unnecessary. The trial court overruled Mr. Barela's objection, stating that it would allow Detective Janis a limited amount of leeway in that regard.

Detective Janis continued testifying that children delay reporting for a variety of reasons—fear, dependence, loyalty, love, fear of not being believed, or because they understand the negative consequences of reporting—and the reasons are unique to each child. He testified a "triggering event" typically causes a child to disclose, which is usually "a receptive person to listen in their life, and that could be a family member or church member or school member, a friend." RP at 542. Detective Janis then testified

6

that he interviewed E.B., and that E.B. disclosed the abuse to church members and ultimately her mother.

Mr. Barela called Dr. Kirk Johnson. On cross-examination, Dr. Johnson testified that

> [t]he vast majority of sexual abuse is never reported. And that abuse that is reported, there is frequently a substantial delay. And I think that that delay is much more common in intrafamilial abuse where the dynamics can be so complex and difficult for the child.

RP at 692. Dr. Johnson also testified that children delay disclosing because they are afraid of not being believed, concerned of harm to the parent, concerned the family will lose resources, or the child believing that it is his or her fault.

After both parties rested, the trial court dismissed the first degree rape of a child charge and submitted one of the counts of first degree incest to the jury as second degree incest. The jury convicted Mr. Barela of first degree child molestation, second degree child molestation, and second degree incest. The jury acquitted him of second degree rape and first degree incest. After the trial, Mr. Barela moved the trial court to arrest judgment and moved for a new trial based on many of the same arguments he now raises on appeal.

The trial court denied Mr. Barela's motion. With regard to the alleged tainting of the jury pool, the trial court referenced Dr. Johnson's testimony that delayed disclosure

"is the norm and not the exception." RP at 926. The trial court reasoned that "whatever [Venire Juror X] said pales in comparison to what—Dr. Johnson testified under oath about his years of experience in this particular area that delayed disclosure is [the] norm and not the exception to the norm." RP at 926. Thus, the court concluded that the discussions regarding delayed reporting during jury selection did not affect the case's outcome.

Mr. Barela appeals.

## ANALYSIS

### A. ALLEGED JURY TAINT DURING VOIR DIRE

Mr. Barela argues that his right to a fair trial by an impartial jury was violated because of venire jurors' statements about delayed reporting in child sex abuse cases. He argues these statements tainted the entire jury venire and require reversal.

The parties first dispute whether Mr. Barela preserved this issue for appellate review. When an evidentiary ruling is pursuant to a motion in limine, the losing party is deemed to have a standing objection and need not specifically object at trial to preserve the issue for appeal. *State v. Finch*, 137 Wn.2d 792, 819-20, 975 P.2d 967 (1999). However, "a party's objections to evidence made in their motion in limine are not preserved for appeal if the 'trial court indicates that further objections at trial are required

8

when making its ruling.'" *Id.* at 820 (quoting *State v. Powell*, 126 Wn.2d 244, 256, 893

P.2d 615 (1995)).

Here, Mr. Barela moved in limine to exclude a "brain-storming type of discussion

of delayed reporting with potential jurors." CP at 129. The trial court determined that

some inquiry into the issue would be permitted, but indicated it would sustain an

objection if the inquiry went too far. Mr. Barela understood this to be the trial court's

ruling. In his motion for a new trial, he argued:

> During Voir Dire, in spite of the Court's ruling that only a limited
> inquiry into juror's opinions and idea regarding delayed reporting [would be
> permitted], the State repeatedly pressed the issue with numerous jurors.
> Finally, following an objection from the defense and a warning from the
> bench, the State, yet again, invited a juror, whose background made him
> obviously predisposed to believing children "victims" of child sexual abuse,
> to speculate upon the issue. As expected, this particular juror began a
> speech regarding his experience and "expertise" into children who report
> sexual abuse, saying that children never lie regarding such claims.

CP at 117 (footnote omitted).

After reviewing the record, we conclude the prosecutor's questions and the venire

jurors' answers during the State's opening voir dire were limited and proper. Despite Mr.

Barela's assertion in the quote above, he never objected during the State's opening voir

dire. Also, on rebuttal voir dire, the dialogue between the prosecutor and Venire Juror X

was likely improper. But because the trial court indicated in its pretrial ruling that it

9

would sustain an objection if the inquiry went too far, Mr. Barela was required to object if he wanted to preserve any claim of error. His failure to object waives his claim of error. *See Powell*, 126 Wn.2d at 256.

B. EVIDENCE REGARDING E.B.'S MOTHER'S MARITAL INFIDELITY

Mr. Barela argues the trial court erred when it excluded evidence relating to Mrs. Barela's marital infidelity.

During cross-examination, defense counsel asked Mrs. Barela if she had an affair within the first couple years of her marriage. The State objected and the trial court sustained the State's objection. Defense counsel did not contest the court's ruling and moved on with another question.

When a trial court excludes evidence, ER 103(a)(2) requires the proponent of that evidence to make an offer of proof in order to preserve the issue for appellate review. Because Mr. Barela did not make an offer of proof as ER 103(a)(2) requires, he failed to preserve this alleged error at the time it occurred. *See Seattle-First Nat'l Bank v. W. Coast Rubber, Inc.*, 41 Wn. App. 604, 609, 705 P.2d 800 (1985).

Mr. Barela moved for a new trial based in part on the trial court excluding this evidence. He therefore preserved for appellate review the trial court's denial of that motion. But this does not help Mr. Barela. CrR 7.5(a) allows a trial court to grant a new

10

trial under eight circumstances, none of which apply to the trial court's exclusion of this

evidence. *See* CrR 7.5(1)-(8).

C.   ALLEGED PROSECUTORIAL MISCONDUCT IN REBUTTAL ARGUMENT

Mr. Barela argues the prosecutor committed misconduct during rebuttal argument

by (1) expressing a personal opinion as to guilt, (2) impugning defense counsel, and

(3) misstating the burden of proof.

The prosecutorial misconduct inquiry consists of two prongs: first, whether the

prosecutor's comments were improper and, if so, whether the improper comments caused

prejudice. *State v. Lindsay*, 180 Wn.2d 423, 430, 326 P.3d 125 (2014). However, when

the defendant fails to object to the prosecutor's conduct or request a curative instruction

at trial, the misconduct is reversible error only if the defendant shows the misconduct was

so flagrant and ill intentioned that an instruction could not have cured the resulting

prejudice.[1]  *Id.*

---

[1] The *Lindsay* court held that when the defense does not object to prosecutorial misconduct but moves for a mistrial, the alleged error has been preserved and the stringent "flagrant and ill intentioned" standard applicable to unpreserved claims does not apply. *Lindsay*, 180 Wn.2d at 430-31, 440-42. In *Lindsay*, "defense counsel made a motion for a mistrial due to prosecutorial misconduct *directly following* the prosecutor's rebuttal closing argument." *Id.* at 430-31 (emphasis added). Here, Mr. Barela only objected to one instance of alleged prosecutorial misconduct during the State's closing argument, and then moved for a new trial pursuant to CrR 7.5 *after* the jury found him guilty. *See* RP at 877; CP at 98. The more stringent "flagrant and ill intentioned"

11

This court reviews allegations of prosecutorial misconduct under an abuse of discretion standard. *Id.* This court gives deference to the trial court's ruling because it is in the best position to most effectively determine if the misconduct prejudiced the defendant's right to a fair trial. *State v. Stenson*, 132 Wn.2d 668, 719, 940 P.2d 1239 (1997).

In the context of closing arguments, the prosecutor has "'wide latitude in making arguments to the jury and prosecutors are allowed to draw reasonable inferences from the evidence.'" *State v. Fisher*, 165 Wn.2d 727, 747, 202 P.3d 937 (2009) (quoting *State v. Gregory*, 158 Wn.2d 759, 841, 147 P.3d 1201 (2006)). This court considers the prosecutor's alleged improper conduct in the context of the total argument, the issues in the case, the evidence addressed in the argument, and the jury instructions. *State v. Anderson*, 153 Wn. App. 417, 430, 220 P.3d 1273 (2009).

### 1. *Personal opinion on guilt*

A prosecutor cannot express a personal opinion as to a defendant's guilt or a witness's credibility, independent of the evidence actually in the case. *Lindsay*, 180 Wn.2d at 437; *In re Pers. Restraint of Glasmann*, 175 Wn.2d 696, 706, 286 P.3d 673

---

standard therefore applies here. *See State v. McKenzie*, 157 Wn.2d 44, 50, 57, 134 P.3d 221 (2006) (applying "flagrant and ill intentioned" standard where defense counsel did

(2012). The use of personal pronouns can be misconduct when a prosecutor uses them to vouch for witness veracity, suggest that the government has special knowledge of evidence not presented to the jury, or appeal to the jury's passions. *See generally State v. Robinson*, 189 Wn. App. 877, 894-95, 359 P.3d 874 (2015). However, their use is not always misconduct, such as when the prosecutor uses them to marshal the evidence. *Id.*

In the State's closing argument, the prosecutor recounted when Mrs. Barela confronted Mr. Barela about E.B.'s allegations. The prosecutor argued that Mr. Barela admitted to Mrs. Barela, "'I have been inappropriate with her,'" and then said, "'There was no sex.'" RP at 812. The prosecutor argued this statement was Mr. Barela admitting that he and E.B. had engaged in sexual activity, but did not have intercourse. During the defense's closing argument, defense counsel argued that Mr. Barela had actually responded to Mrs. Barela by saying, "'Yes, I've been inappropriate . . . but it wasn't *sexual*.'" RP at 853 (emphasis added). On rebuttal, the prosecutor stated: "It wasn't sexual. Where did that come from? Gosh, I didn't hear that. I didn't hear that at all." RP at 877. Defense counsel objected and the trial court sustained the objection.

However, the prosecutor's statement that "Gosh, I didn't hear that. I didn't hear that at all" was not an improper opinion on Mr. Barela's guilt or Mrs. Barela's credibility.

---

not object during prosecutor's closing argument and then moved for a new trial pursuant

Nor was the prosecutor appealing to the jury's passions or suggesting that the State had special knowledge of evidence not presented to the jury. The prosecutor was arguing that defense counsel was misstating the evidence. While the prosecutor opined on what he personally believed the evidence was, this is not the same as opining on Mr. Barela's guilt or Mrs. Barela's credibility. The prosecutor's comment did not constitute misconduct.

### 2. *Impugning defense counsel*

"A prosecutor can certainly argue that the evidence does not support the defense theory." *Lindsay*, 180 Wn.2d at 431. However, a prosecutor must not impugn defense counsel's role or integrity. *Id.* at 431-32. This severely damages an accused's opportunity to present his or her case. *Id.* at 432. Statements that imply that only prosecutors have an obligation to "see that justice is served" and that defense counsel stand in the way of that justice are improper. *State v. Gonzales*, 111 Wn. App. 276, 283-84, 45 P.3d 205 (2002).

However, a prosecutor's statements impugning defense counsel must be fairly egregious to require reversal under the stringent "flagrant and ill intentioned" standard. In *Negrete*, the prosecutor stated during rebuttal that defense counsel was "'*being paid to*

---

to CrR 7.5 after the verdict, alleging prosecutorial misconduct).

14

*twist the words of the witnesses,*'" which this court held was improper but not irreparably prejudicial. *State v. Negrete*, 72 Wn. App. 62, 66-67, 863 P.2d 137 (1993).

In *Warren*, the prosecutor argued that there were a "'number of mischaracterizations'" in defense counsel's argument, and these were "'an example of what people go through in a criminal justice system when they deal with defense attorneys.'" *State v. Warren*, 165 Wn.2d 17, 29, 195 P.3d 940 (2008). The prosecutor also described defense counsel's argument as a "'classic example of taking these facts and completely twisting them to their own benefit, and hoping that you are not smart enough to figure out what in fact they are doing.'" *Id.* The court held that these comments, while improper, were not irreparably prejudicial. *Id.* at 30-31.

Similarly, in *Thorgerson*, the prosecutor argued during closing argument that, "'The entire defense is sleight of hand. Look over here, but don't pay attention to there. Pay attention to relatives that didn't testify that have nothing to do with the case. . . . Don't pay attention to the evidence.'" *State v. Thorgerson*, 172 Wn.2d 438, 451, 258 P.3d 43 (2011) (alteration omitted). The court held that the comments, while improper, likely did not alter the outcome of the case and an instruction could have cured the prejudice. *Id.* at 452.

15

Here, Mr. Barela argues that the prosecutor made two comments in rebuttal that impugned defense counsel. The first is when the State responded to defense counsel's suggestion that E.B. and Mrs. Barela had fabricated the story:

> Posturing, everybody's posturing; apparently, I am, too, posturing. Witness is posturing, Ms. Barela is posturing, [E.B.] is posturing. It's a big ruse we're pulling over on you, apparently. That's what the defense would have you believe. . . .
> . . . She came up with this because, "Gosh, you know, he made me do my homework too much. He wanted me to do swimming lessons. He was strict with me sometimes." Oh, really? Use your common sense and experience when you deal with children.

RP at 875-76. These comments, while sarcastic, were directed at the defense's *theory* and not at defense *counsel*. The prosecutor was arguing that the inferences from the evidence did not support the defense theory. These comments were not improper.

Mr. Barela also argues that the prosecutor impugned defense counsel when he argued that:

> [Defense counsel] weaves his facts. . . .
> . . . Some things I have to talk about, because what the defense wants to do—and that's what they do. That's what happens—chip away, chip away, chip away; "Oh, and it never happened. She's lying"; chip away, chip away.

16

RP at 871-72. Mr. Barela did not object. Assuming without deciding that the remarks impugned defense counsel, they were not so flagrant or ill intentioned so as to require reversal.

3. *Misstatement of the burden of proof*

Mr. Barela also claims the prosecutor committed misconduct during closing argument by misstating the burden of proof.

As mentioned, a prosecutor has wide latitude to argue reasonable inferences from the evidence. *Fisher*, 165 Wn.2d at 747. "However, it is improper for the prosecutor to argue that the burden of proof rests with the defendant." *Thorgerson*, 172 Wn.2d at 453. Shifting this burden is flagrant and ill intentioned misconduct. *Glasmann*, 175 Wn.2d at 713. "In essence, the State acts improperly when it mischaracterizes the standard as requiring anything less than an abiding belief that the evidence presented establishes the defendant's guilt beyond a reasonable doubt." *State v. Feely*, 192 Wn. App. 751, 762, 368 P.3d 514, *review denied*, 185 Wn.2d 1042, 377 P.3d 762 (2016).

Mr. Barela argues the prosecutor misstated the burden of proof in rebuttal when he said,

> [This is] what you signed up to do, as tough as it is: to assess what came out of that chair, what was said to you, to assess the credibility. *You must make reasonable doubt into some type of comfortable, clean picture.* That's not the standard, abiding conviction is.

17

RP at 875 (emphasis added). Mr. Barela argues that the prosecutor told the jury that they must form a "comfortable, clean picture" of reasonable doubt in order to acquit him.

Importantly, this court examines prosecutors' statements in context. *Anderson*, 153 Wn. App. at 430. When examining this statement in the context of the defense's closing argument, it is clear that the prosecutor was *not* telling the jury that it needed to form a "comfortable, clean picture" of reasonable doubt. Defense counsel stated several times during his closing argument that the jury members needed to have a "comfortable, clear, picture in [their] mind[s] of what happened" before they convicted Mr. Barela. RP at 845; *see also* RP at 840, 846. In this disputed comment, the prosecutor referenced defense counsel's use of this phrase and then said, "That's not the standard, abiding conviction is," which is the correct standard. *See Feely*, 192 Wn. App. at 762.

Mr. Barela also argues the prosecutor misstated the burden of proof when he argued that

> the State has put on evidence that overcomes this presumption. The type of evidence that overcomes the presumption of innocence. We put on evidence. Reasonable doubt is defined for—it's an abiding conviction (inaudible). Reasonable doubt, *some reason*, not any reason. It's not beyond any doubt. Read the instructions. If you have an abiding belief in the guilt of Mr. Barela based on evidence that's been provided to you, you must come back with guilty verdicts as to all the counts.

RP at 882 (emphasis added). Mr. Barela argues that the prosecutor's use of "some

reason" told the jury that it needed a *reason* to convict him. However, the

prosecutor was simply emphasizing to the jury that a doubt needed to be a

*reasonable* one, rather than just any doubt. The prosecutor's contemporaneous

references to the presumption of innocence and the "abiding belief" standard

reinforces that the prosecutor did not misstate the burden of proof here.

We determine that none of the prosecutor's comments throughout closing

argument establish a basis for reversing Mr. Barela's convictions.

D.     DETECTIVE JANIS'S TESTIMONY REGARDING DELAYED REPORTING

Mr. Barela argues that the trial court erred when it allowed Detective Janis to

testify regarding delayed reporting in the State's case-in-chief. He argues Detective

Janis's testimony improperly vouched for and bolstered E.B.'s credibility and carried a

special aura of reliability due to his status as a police officer.

"An expert may not offer an opinion on an ultimate issue of fact when it is based

solely on the expert's perception of the witness' truthfulness." *State v. Alexander*, 64 Wn.

App. 147, 154, 822 P.2d 1250 (1992). This invades the jury's exclusive function to

weigh the evidence and determine credibility. *Id.* However, a qualified expert is

competent to express an opinion on a proper subject even though he or she thereby

19

expresses an opinion on the ultimate fact to be found by the trier of fact. *State v. Kirkman*, 159 Wn.2d 918, 929, 155 P.3d 125 (2007). "The mere fact that the opinion of an expert covers an issue which the jury has to pass upon does not call for automatic exclusion." *Id.*

A trial court has discretion to permit expert testimony tending to corroborate the testimony of a witness whose credibility is in issue. *State v. Holland*, 77 Wn. App. 420, 427, 891 P.2d 49 (1995). "An expert's opinion that it is not uncommon for a sexual abuse victim to delay reporting the abuse is appropriate when . . . the credibility of the victim has been put in issue." *Id.*; *accord State v. Petrich*, 101 Wn.2d 566, 575, 683 P.2d 173 (1984) (where child failed to report sex abuse for eight months, expert could testify that delayed reporting was common and that the length of the delay correlated with the nature of the relationship with the perpetrator), *overruled in part on other grounds by State v. Kitchen*, 110 Wn.2d 403, 756 P.2d 105 (1988), *abrogated in part on other grounds by In re Pers. Restraint of Stockwell*, 179 Wn.2d 588, 316 P.3d 1007 (2014).

E.B.'s credibility was the central issue in Mr. Barela's trial, and therefore the State was justified in presenting expert testimony to corroborate her testimony. Mr. Barela contends, however, that Detective Janis improperly vouched for and bolstered E.B.'s credibility. But Detective Janis did not give an opinion, either directly or indirectly, on

20

Mr. Barela's guilt or E.B.'s credibility. Rather, he testified generally about what delayed disclosures are, the reasons why they occur, and what causes children to eventually disclose. The closest Detective Janis came to opining on this particular case as opposed to delayed reporting in general was when he testified that "[t]here are a variety of reasons why somebody would delay. . . . For this particular case, it's an intrafamilial case or a case that involves a family member." RP at 540-41. While this was an opinion as to why E.B. delayed reporting, it was not an opinion that Mr. Barela was guilty, that he believed E.B., or that E.B. was telling the truth. But even if this testimony was an improper opinion on E.B.'s credibility, because Mr. Barela's own expert agreed with the detective, there was no prejudice.

The trial court did not abuse its discretion when it allowed Detective Janis to testify about delayed reporting during the State's case-in-chief.

E.    "HUE AND CRY" DOCTRINE

Mr. Barela argues that the trial court erred in admitting testimony about E.B.'s disclosure under the "hue and cry" doctrine because she initially disclosed the abuse to a school friend and E.B.'s disclosure was not made in a timely manner.

The "hue and cry" doctrine, also known as the "fact of complaint" rule, allows the State in criminal sexual assault cases to present evidence that the victim complained to

21

someone within a reasonable time after the assault. *State v. Ferguson*, 100 Wn.2d 131, 144, 667 P.2d 68 (1983). The rationale for this doctrine is to dispel the feudal inference that a person who does not disclose shortly after being sexually assaulted must be fabricating the story. *State v. Bray*, 23 Wn. App. 117, 121-22, 594 P.2d 1363 (1979). "The evidence is not hearsay because it is introduced for the purpose of bolstering the victim's credibility and is not substantive evidence of the crime." *Id.* at 121.

For a disclosure to be admissible under the hue and cry doctrine, it must be made within a reasonable amount of time after the assault. *State v. Chenoweth*, 188 Wn. App. 521, 532, 354 P.3d 13, *review denied*, 184 Wn.2d 1023, 361 P.3d 747 (2015); *Alexander*, 64 Wn. App. at 151 ("[T]his narrow exception allows only evidence establishing that a complaint was timely made."). The *Chenoweth* court found that disclosures made nearly one year later cannot reasonably be considered "timely" and were inadmissible under the hue and cry doctrine. *Chenoweth*, 188 Wn. App. at 533; *see also State v. Griffin*, 43 Wash. 591, 598, 86 P. 951 (1906) (complaint made six months after assault was not sufficiently timely to be admissible under the hue and cry doctrine).

Here, Ms. Mutch testified that E.B. "told me that her dad had been molesting her." RP at 364. E.B.'s disclosure to Ms. Mutch was not of a recent event. Rather, her disclosure concerned past conduct that had no temporal component. This does not fit

22

within the hue and cry exception to the hearsay rule, which must concern a recent event. For this reason, the trial court erred when it admitted the statement.

However, evidentiary error is grounds for reversal only if, within reasonable probabilities, the error affected the outcome of the trial. *State v. Neal*, 144 Wn.2d 600, 611, 30 P.3d 1255 (2001). "Improper admission of evidence constitutes harmless error if the evidence is of minor significance in reference to the evidence as a whole." *Id.*

E.B. testified at trial that she told Ms. Mutch that her dad had been molesting her. Had Ms. Mutch's improper testimony not been allowed, the jury still would have heard the same information, but through E.B. Mrs. Barela testified that she confronted her husband after E.B.'s allegations, and he admitted that he had been inappropriate with E.B. In light of the evidence as a whole, we conclude that Ms. Mutch's improper testimony was only of minor significance, and reversal is not warranted.

F.   CUMULATIVE ERROR

Mr. Barela argues his conviction should be reversed based on cumulative error. The cumulative error doctrine applies if there were several trial errors, none of which standing alone is sufficient to warrant reversal, that when combined may have denied the defendant a fair trial. *State v. Greiff*, 141 Wn.2d 910, 929, 10 P.3d 390 (2000); *accord Alexander*, 64 Wn. App. at 158. Here, the only preserved error was the trial court's ruling

23

No. 32968-2-III
*State v. Barela*

admitting Ms. Mutch's statement under the hue and cry doctrine. Because Mr. Barela did not preserve any other errors, there was no cumulative error.

G. APPELLATE COSTS

In compliance with this court's June 2016 general order, Mr. Barela filed a supplemental brief with appropriate argument, supported by a current statement of financial circumstances, establishing his current and future inability to pay an award of appellate costs. A majority of this panel denies the State an award of appellate costs.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Lawrence-Berrey, A.C.J.

WE CONCUR:

Korsmo, J.

Pennell, J.

24