[No. 26589-0-I. Division One. February 3, 1992.]

THE STATE OF WASHINGTON, *Respondent*, v. ROBERT LAMONE ALEXANDER, *Appellant*.

148

*Rita Griffith* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Jeffrey Smith, Deputy,* for respondent.

AGID, J. — Robert Lamone Alexander appeals his judgment for two counts of first degree rape of a child. He challenges the admissibility of the alleged victim's out-of-court statements under the "fact of the complaint" doctrine and other hearsay exceptions, the trial court's failure to grant a mistrial on the ground of prosecutorial misconduct, and the sufficiency of the evidence. We reverse and remand for a new trial.

## I
### FACTS

Alexander was charged with two counts of rape committed on 9-year-old M during the period of May 1, 1989, to June 1, 1989. M's mother, "S", and Alexander lived together for 4 years. After Alexander moved out of S's apartment in 1987, M continued to visit him regularly and spent two or three weekend nights a month at his house.

In his opening statement, the prosecutor argued that the State would prove that Alexander sexually abused M in his home on three occasions, including an incident involving baby oil and an incident in the bathtub. However, M's actual trial testimony about what happened and when she was abused differed from the State's description during opening argument.

With respect to when the sexual abuse occurred, M initially testified that the first incident took place in February when she and her brother were spending the night at Alexander's house. The second incident happened about a week later, and the third, the following week. She also testified, however, that she disclosed the abuse to her mother and a counselor, David Bennett, during a counseling session 4 days after Alexander last abused her. According to S, that counseling session took place the last Friday in May. On cross examination, M testified that the third incident happened the weekend before Mother's Day, 2 weeks after the previous incidents on two consecutive weekends.

M's mother also testified that she recalled only two weekend nights when both M and her brother stayed at Alexander's apartment: the weekend of February 9, when S graduated from school, and once in May. She also testified that she saw blood on M's underwear in May.

When the prosecutor questioned M about what Alexander had done to her, she initially denied that he had touched her vagina in the bathtub. The prosecutor then showed M three pictures she had drawn earlier for Detective Connors. M explained that in one picture, she and Alexander were taking a bath, "and that is when he touched me with his mouth". The drawing showed tears on M's face, indicating that she was crying "[b]ecause he wouldn't stop." On redirect, M testified that, "Nothing really happened in the bathtub. He just washed me." M had also drawn a picture showing the defendant "putting baby oil . . . [o]n my body." She denied that he had put baby oil on her vagina.

Dr. Mary Gibbons testified from an examination record written by Dr. Fraser, a doctor under her supervision who had examined M, and from her own examination of colposcopic slides of M. Dr. Gibbons' testimony included the verbatim quotes M made to Dr. Fraser during the exam. M's description to Dr. Fraser of the first incident of abuse paralleled her account given at trial. She also told the doctor that Alexander had touched her in her "privates" in the bathtub. M said the touching was painful, and that "when I wiped it, red stuff came out." M told the doctor that the abuse happened the weekend before Mother's Day, the weekend after Mother's Day, and the following weekend. From her examination of the slides and the medical report, Dr. Gibbons concluded that there had been vaginal penetrating trauma.

## II

### DISCUSSION

■ As a preliminary matter, we note that several of the errors alleged on appeal were not properly preserved for appeal. Because we believe, however, that the cumulative

effect of all the errors, preserved and not preserved, denied Alexander his constitutional right to a fair trial, *State v. Coe*, 101 Wn.2d 772, 789, 684 P.2d 668 (1984), we exercise our discretion under RAP 2.5(a)(3) to review all of his claims. *See State v. Curry*, 62 Wn. App. 676, 679, 814 P.2d 1252 (1991); *State v. Noel*, 51 Wn. App. 436, 439, 753 P.2d 1017, *review denied*, 111 Wn.2d 1003 (1988).

A
Testimony Admitted Under "Fact of the Complaint"
Hearsay Exception

Alexander first contends that the trial court erroneously allowed M, her mother, and her counselor to testify that M had disclosed the abuse to them shortly after the last incident occurred. He argues that the "fact of the complaint" hearsay exception, under which the trial court admitted the testimony, is inapplicable here because the defense did not allege an untimely complaint.

■ In criminal trials involving sex offenses, the prosecution may present evidence that the victim complained to someone after the assault. *State v. Ferguson*, 100 Wn.2d 131, 135, 667 P.2d 68 (1983); *State v. Murley*, 35 Wn.2d 233, 237, 212 P.2d 801 (1949). However, this narrow exception allows only evidence establishing that a complaint was timely made. Evidence of the details of the complaint, including the identity of the offender and the specifics of the act, is not admissible. *Ferguson*, 100 Wn.2d at 135-36.

In *Murley*, the court held that "the credibility of the complaining witness, irrespective of whether it is assailed or unassailed, may be supported by evidence of her timely prior out-of-court complaint." 35 Wn.2d at 236-37. The court explained the history behind the "hue and cry" doctrine, as it was formerly known. When the State made no showing as to when the victim first complained, the omission raised the inference that she did not complain at all and that she therefore fabricated her allegations. The existence of this inference required the State to prove affirmatively in its case in chief that the victim timely complained. While the

State no longer bears such a burden, the *Murley* court acknowledged that, if the State were to remain silent as to when the victim complained, the inference of fabrication could still exist. Thus, the court ruled that, because the inference "affects [her] credibility generally," evidence of when the victim first complained is admissible. 35 Wn.2d at 237; *see also State v. Fleming*, 27 Wn. App. 952, 957, 621 P.2d 779 (1980), *review denied*, 95 Wn.2d 1013 (1981). Applying that rule to this case, the fact of M's prior disclosure was admissible even though the defendant did not expressly raise as an issue the timeliness of her complaint.

Alexander argues, however, that the trial court admitted evidence beyond the scope of that permitted under the "fact of the complaint" doctrine. In this regard, the defendant assigns error to several portions of Bennett's and S's testimony.

He first challenges Bennett's testimony that M's description of the abuse was "very clear" and that it remained consistent throughout their counseling sessions.[1] From this testimony, the jury could have inferred that, because M consistently described the sexual abuse during her repeated disclosures to her counselor, it was more likely that she was telling the truth. Unless the defense directly attacks the victim's credibility by, for example, suggesting that she recently fabricated her allegations, evidence that she repeatedly told the same story out of court is not admissible to corroborate or bolster her testimony. *Thomas v. French*, 99 Wn.2d 95, 659 P.2d 1097 (1983); *State v. Bray*, 23 Wn. App. 117, 125, 594 P.2d 1363 (1979); *State v. Harper*, 35 Wn. App. 855, 857, 670 P.2d 296 (1983). This is because "repetition is not generally a valid test for veracity." *Harper*, 35

---

[1] The State argues that this and other testimony discussed below was properly admitted as prior consistent statements under ER 801(d)(1)(ii). This argument lacks merit because the defense did not suggest that M had recently fabricated her allegations. *State v. Osborn*, 59 Wn. App. 1, 795 P.2d 1174, *review denied*, 115 Wn.2d 1032 (1990). Moreover, although defense counsel said in his opening statement that M was motivated to lie about the abuse because she was upset about Alexander's impending marriage, he did not pursue this theory in his examination of M or in his closing argument.

Wn. App. at 857. Thus, Bennett's testimony that M's disclosures were consistent impermissibly bolstered M's credibility and should not have been allowed.

Alexander also argues that the prosecutor went beyond the scope of the fact of disclosure during the following portion of his examination of S:

Q: Now at one of these counseling sessions did you inquire of [M] as to why she was acting out?
A: Yes.
Q: What was her response?
MR. BENJAMIN: I would object, hearsay.
THE COURT: I will permit it.
MR. SMITH: Thank you.
A: She mentioned to David and I that some things were going on over there, and that she was scared to talk about it.
Q: When she said over there —
A: Over at Robert's house. Over at Robert Alexander's house.
Q: Do you remember when this counseling session was?
A: It was in May of 1989.
Q: When she said things were going on over there did she get more specific about what happened?
A: Yes.
MR. BENJAMIN: Objection, hearsay again.
MR. SMITH: The nature of the disclosure, the fact of disclosure.
THE COURT: I am going to sustain the objection.

Alexander also attacks the trial court's admission of Bennett's testimony that he filed a Child Protective Services (CPS) sexual abuse report against only one individual. In both instances, Alexander believes the trial court indirectly admitted evidence of the abuser's identity, which is not admissible under the fact of complaint doctrine. We agree. The prosecutor's questioning elicited inadmissible evidence of the details of the sexual abuse allegations, *i.e.*, the abuser's identity. *Ferguson*, 100 Wn.2d at 135-36. S's testimony that M spoke of "some things [that] were going on over . . . at Robert Alexander's house" and Bennett's testimony that he filed only one report of sexual abuse both raised a virtually indisputable inference that in each instance M identified Alexander as the abuser.[2]

---

[2]Had the procedures set forth in RCW 9A.44.120 and *State v. Ryan*, 103 Wn.2d 165, 691 P.2d 197 (1984) been followed, some of this testimony may have

## B
## Vouching Testimony

 Next, Alexander assigns error to the prosecutor's questioning Bennett about whether M gave any indication that she was lying about the abuse. As in most sexual abuse cases, credibility was a crucial issue here because the testimony of M and Alexander directly conflicted. *See State v. Fitzgerald*, 39 Wn. App. 652, 657, 694 P.2d 1117 (1985). An expert may not offer an opinion on an ultimate issue of fact when it is based solely on the expert's perception of the witness' truthfulness. 39 Wn. App. at 657. That is precisely what Bennett did in this case. By stating that he believed M was not lying, Bennett effectively testified that Alexander was guilty as charged. An expert's opinion as to the defendant's guilt invades the jury's exclusive function to weigh the evidence and determine credibility. *Fitzgerald*, 39 Wn. App. at 657; *State v. Carlin*, 40 Wn. App. 698, 701, 700 P.2d 323 (1985). Because the accumulation of this and other trial errors denied the defendant his right to a fair and impartial jury trial, *State v. Coe*, 101 Wn.2d 772, 789, 684 P.2d 668 (1984), we cannot conclude that the error was harmless beyond a reasonable doubt.[3] *See Carlin*, 40 Wn. App. at 701-03.

## C
## Prosecutorial Misconduct

██ In a related argument, Alexander contends that the prosecutor's attempts to elicit testimony from the witnesses beyond that allowed under the fact of complaint exception, discussed above, constituted misconduct. He specifically

---

been admissible as child hearsay. However, they were not. We cannot permit the State to achieve the same result while circumventing the requirement that the reliability of such statements first be demonstrated.

[3]Compounding the prejudicial effect of this testimony was Dr. Gibbons' testimony that she believed M had been a victim of sexual abuse. Although defense counsel did not object at trial or challenge this testimony on appeal, we deem it necessary to point out this flagrant error to prevent its repetition at retrial. Dr. Gibbons' statement was clearly an impermissible opinion on the defendant's guilt. *Fitzgerald*, 39 Wn. App. at 657.

points to the prosecutor's repeated attempts to elicit from Bennett who M named as her abuser. Alexander maintains this was misconduct despite the fact that the trial court sustained his objections to the improper questions. As we concluded above, the prosecutor's questions in this regard were improper. They left the jury with the impression that Bennett had a great deal of knowledge favorable to the State which, but for the court's rulings, would have been revealed. The pattern of repeatedly asking the same question has the effect of telling the jury the answer to it even when all of defense counsel's objections are sustained.

Alexander argues that the misconduct required a mistrial and his mistrial motion should therefore have been granted. We cannot say that the prosecutor's questions, standing alone, warranted the grant of a mistrial. In any event, we need not decide this issue given our conclusion that cumulative error denied Alexander a fair trial.

Alexander further contends that certain of the prosecutor's closing remarks to the jury also constituted misconduct. The prosecutor remarked: that the jury had heard testimony from M's mother and counselor "that the defendant did it"; that M had not implicated anyone else; and that her disclosures were consistent. A defendant may not assign error to a prosecutor's argument unless he objected to the improper remarks and requested a curative instruction. *State v. Monk*, 42 Wn. App. 320, 324-25, 711 P.2d 365 (1985); *State v. Ziegler*, 114 Wn.2d 533, 540, 789 P.2d 79 (1990). Here, the defense neither objected to the State's closing argument nor requested a curative instruction.

■ ■ An exception to this rule is warranted, however, when the misconduct is so flagrant and ill intentioned that no instruction could obviate the prejudice engendered by it. *Monk*, 42 Wn. App. at 325; *Ziegler*, 114 Wn.2d at 540. The prosecutor's improper remarks were an attempt to bring in inadmissible testimony to bolster M's trial testimony and credibility. The prosecutor made the remarks even though the trial court earlier had made it quite clear that their

content was objectionable by sustaining numerous defense *objections to similar questions during the trial.* Thus, we believe that the prosecutor's repeated attempts in closing to instill inadmissible evidence in the jurors' minds was flagrant and ill intentioned and therefore constituted misconduct.

## D
### Expert Testimony

Alexander next contends that the trial court improperly admitted, and permitted Dr. Gibbons to testify from, the medical report relating statements that M made during Dr. Fraser's examination of her. We disagree.

Dr. Gibbons did not record the information contained in the examination record at issue. Thus, her testimony from that report is hearsay. Further, M's statements contained in the report are also hearsay. When a witness' testimony includes hearsay within hearsay, "each part of the combined statements" must fall within a hearsay exception. ER 805. Alexander apparently concedes that M's statements are admissible under ER 803(a)(4), which allows the admission of statements for purposes of medical diagnosis or treatment. This exception clearly covers that aspect of the hearsay testimony.

██ The trial court permitted Dr. Gibbons to testify as to M's statements to Dr. Fraser under the business records exception to the hearsay rule, RCW 5.45.020. Great weight is given to the trial court's decision to admit or exclude evidence under the business records exception. Accordingly, its ruling will not be reversed unless there has been a manifest abuse of discretion. *Ziegler,* 114 Wn.2d at 538. Medical records are admissible under the business records exception as long as they are properly identified and otherwise relevant. 114 Wn.2d at 538-39. "The testifying witness need not have conducted nor personally observed all of the tests . . . contained in the report, so long as it was prepared under the witness' supervision." *State v. Heggins,* 55 Wn. App. 591, 596, 779 P.2d 285 (1989). As Dr. Fraser's supervi-

sor, Dr. Gibbons was qualified to testify to facts contained in Dr. Fraser's medical report.

An expert witness may testify to an " 'act, condition or event' ", but not to entries in the form of opinions or statements as to cause. *Heggins*, 55 Wn. App. at 596 (quoting *State v. Kreck*, 86 Wn.2d 112, 118, 542 P.2d 782 (1975)); *see* RCW 5.45.020. Alexander erroneously concludes that M's verbatim statements are statements as to cause and therefore not within the business records exception. This would be true if the statements were not independently admissible under ER 803(a)(4). Because they are, however, they are equivalent to other facts recorded during a medical examination. Accordingly, the trial court properly admitted the medical record under RCW 5.45.020 and the victim's statements relating the abuse under ER 803(a)(4).[4]

E

Sufficiency of the Evidence

Finally, Alexander contends that the evidence on count 1 was insufficient to prove that more than one act of sexual intercourse occurred during the charging period and that digital penetration occurred at all. In reviewing the sufficiency of the evidence in a criminal prosecution, this court views the evidence in the light most favorable to the prosecution. If, after viewing the evidence in this light, the appellate court concludes that *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, it must uphold the verdict. *State v. Scoby*, 117 Wn.2d 55, 61, 810 P.2d 1358, 815 P.2d 1362 (1991).

Initially, we observe that the victim need not "pinpoint the exact dates of the oft-repeated incidents of sexual con-

---

[4] At oral argument, defense counsel contended that Dr. Gibbons had testified that M had told Dr. Fraser that there had been "digital penetration". Counsel has not provided the court with any citation to the record supporting that contention, and our review of the record did not locate any such testimony by Dr. Gibbons. Dr. Gibbons did testify that what she saw in the medical examination report and colposcopic slides was consistent with M's account of her medical history. This testimony was proper because it was an expert opinion based on facts, including M's quoted statements, properly admitted into evidence. *Heggins*, 55 Wn. App. at 596.

tact". *Ferguson*, 100 Wn.2d at 139. In this case, however, the inconsistencies in M's testimony regarding when the abuse occurred, and whether the bathtub or baby oil incidents occurred at all, were extreme. We cannot conclude that a rational jury would have returned the same verdict had Bennett's and S's bolstering testimony and the prosecutor's improper remarks been properly excluded. Accordingly, we hold that, without this inadmissible testimony, the evidence presented to this jury was too confused to allow it to find Alexander guilty on either count beyond a reasonable doubt.

In summary, the vouching and hearsay testimony of Bennett and S, when combined with the prosecutor's improper questions and closing remarks, prevented Alexander from obtaining a fair trial. *Coe*, 101 Wn.2d at 789; *State v. Oughton*, 26 Wn. App. 74, 85, 612 P.2d 812, *review denied*, 94 Wn.2d 1005 (1980). Accordingly, we reverse the judgment and remand for a new trial.

GROSSE, C.J., and KENNEDY, J., concur.