IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 76632-5-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| KAREN LYNN KLEINSMITH, | ) | |
| | ) | |
| Appellant. | ) | |
| | ) | FILED: November 13, 2018 |

ANDRUS, J. — A jury convicted Karen Lynn Kleinsmith of second degree assault with a deadly weapon after she chased her neighbor, Sara Trowbridge, down the hallway of their apartment building while holding a knife. Kleinsmith appeals, alleging that at trial, the prosecutor committed misconduct by asking the witnesses to opine as to Trowbridge's credibility. Kleinsmith also challenges a jury instruction, contending that it did not state all the elements of the crime. We affirm Kleinsmith's conviction.

## FACTS

Kleinsmith and Trowbridge have varying accounts of what happened on December 13, 2016. It is undisputed that in December 2016, Kleinsmith and Trowbridge lived in adjacent apartments in the Ondine Apartments in Kirkland. Trowbridge testified that on December 13, 2016, as she walked past Kleinsmith's

Apartment 409, she heard a woman say "Get the fuck out." When Trowbridge turned around, she saw a woman holding a butcher knife. Trowbridge testified that the woman screamed "Don't come back" and began to chase her down the hallway. Trowbridge immediately fled to the building's front office and reported the event to Hannah Weber, an employee of Ondine, who called 9-1-1. Trowbridge described her alleged attacker as a blonde female wearing a black t-shirt and shorts, which was recorded by the 9-1-1 call.

Multiple officers responded to the call, including Corporal Kimberly Baxter, Officer Elizabeth Voss, and Detective Sean Carlson. Weber identified the resident of Apartment 409 as Kleinsmith and testified that Kleinsmith matched the physical description Trowbridge provided. Weber communicated this information to the officers who arrived on scene. The officers discovered that Kleinsmith had an outstanding arrest warrant from pending cases in Issaquah Municipal Court.[1] When the officers went to Apartment 409, they knocked loudly on the door, announced themselves repeatedly, and called several phone numbers associated with Kleinsmith, until the officers finally used a key given to them by Weber to enter the apartment.

When the officers entered Apartment 409, they heard a woman screaming inside, so they ordered her to walk toward the front door with her hands visible.

---

[1] Kleinsmith was charged with assault in the fourth degree, domestic violence, for allegedly attacking her elderly father with a kitchen knife, as well as a violation of a domestic violence no-contact order. Kleinsmith's father suffers from pre-dementia. While the court's findings of fact state that the charges are pending in Kirkland Municipal Court, the Prosecuting Attorney Case Summary states that the cases are pending in Issaquah Municipal Court.

Kleinsmith emerged from the back of the apartment and told the officers that she had been sleeping and did not know what was happening.

The police placed Kleinsmith in handcuffs and advised her of her Miranda[2] rights, at which point she invoked her right to have an attorney present for questioning. Though the police did not continue to question Kleinsmith after she invoked her rights, Kleinsmith did ask Detective Carlson to go back into her apartment to retrieve some clothing, and she later asked Corporal Baxter to retrieve her wallet and phone. She engaged in brief conversation with both as to where the items could be located and gave them permission to enter her apartment for that purpose. Detective Carlson noticed a large knife by the kitchen sink, and Corporal Baxter placed it into evidence.

As the police escorted Kleinsmith out of the building, Trowbridge identified Kleinsmith as her attacker, telling Detective Carlson she was "one hundred percent" sure that it was Kleinsmith.

At trial, the State called five witnesses: Weber, Corporal Baxter, Officer Voss, Detective Carlson, and Trowbridge. Although Trowbridge was the sole witness to the incident, each witness testified as to the events of that day. Kleinsmith did not testify. The prosecutor asked Weber whether Trowbridge's story to the officers on scene was consistent with what Trowbridge had told her immediately following the incident. The prosecutor also asked Detective Carlson whether Trowbridge's story changed between when the officers first arrived on

---

[2] Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

scene and her formal statement taken later that day. Both Weber and Carlson testified that Trowbridge's story remained consistent throughout.

A jury found Kleinsmith guilty of assault in the second degree. Kleinsmith was sentenced to four-and-a-half months in King County Jail, and six months in community custody, and ordered to have no contact with Trowbridge for 10 years. The court also ordered Kleinsmith to obtain mental health treatment.

## ANALYSIS

### A. Misconduct Related to the Witness's Credibility

Kleinsmith alleges that the prosecutor committed misconduct when he asked two of the witnesses to opine on Trowbridge's credibility. The misconduct, she contends, was prejudicial as Trowbridge was the only witness to, and alleged victim of, the incident with Kleinsmith. The State concedes that witness testimony regarding the consistency of Trowbridge's statements was erroneously admitted, but contends that it was not prejudicial.

Evidence that a witness repeatedly told the same story out of court is not admissible to corroborate or bolster the witness's testimony. State v. Alexander, 64 Wn. App. 147, 822 P.2d 1250 (1992). Thus, the prosecutor improperly attempted to bolster Trowbridge's credibility when he asked Weber and the officers whether Trowbridge's story remained consistent at the scene and in court.

Kleinsmith, however, failed to object to the prosecutor's questions or to the witnesses' testimony at trial. An evidentiary error, such as the admissibility of testimony regarding Trowbridge's credibility, is not of constitutional magnitude. State v. Powell, 166 Wn.2d 73, 84, 206 P.3d 321 (2009). And the failure to object

to impermissible statements by a prosecutor constitutes a waiver of the objection unless there is a substantial likelihood it affected the jury's verdict. State v. Gauthier, 189 Wn. App. 30, 37, 354 P.3d 900 (2015). When the defendant fails to object at trial, the defendant must also prove that the statements were so flagrant or ill-intentioned that the prejudice could not have been cured by a timely objection. Id. at 38.

Kleinsmith's defense at trial was that Trowbridge had misidentified her as the attacker. She asserts that the cumulative effect of four witnesses vouching for Trowbridge's credibility prejudiced the jury into believing Trowbridge's testimony that Kleinsmith was the woman who charged her with the knife. We disagree because there was ample evidence corroborating Trowbridge's testimony.

First, Kleinsmith matched the physical description of Trowbridge's attacker. Second, Weber testified that Trowbridge's only other neighbor, in Apartment 413, was a male resident and that there were no residents on Trowbridge's floor matching the physical description Trowbridge provided. Moreover, Trowbridge heard a woman scream "Get the fuck out," as she passed Kleinsmith's apartment. She subsequently identified Kleinsmith as her attacker as Kleinsmith was being escorted out of the apartment building by police, stating she was "one hundred percent" sure Kleinsmith was the woman wielding the knife.

Kleinsmith points to the fact that Trowbridge insisted the knife she saw was a butcher knife, while the knife found in Kleinsmith's kitchen was a steak knife. Kleinsmith also points out that the attacker's clothing as described by Trowbridge was different than the clothing Kleinsmith was wearing when arrested. She argues

that these inconsistencies raise serious questions as to the credibility of Trowbridge's overall story that Kleinsmith was her attacker. However, it is not implausible that Kleinsmith changed clothing during the half hour between the event and her encounter with the police. And the fact that no other resident on the floor other than Kleinsmith matched Trowbridge's description of her assailant, combined with the location of the altercation, is strong evidence that Kleinsmith was in fact her attacker.

Finally, Kleinsmith told police she had been sleeping in her apartment and had not heard the police, a fairly incredible story considering the duration of time the police stood outside her door attempting to get her attention. Corporal Baxter testified she knocked loudly and identified herself as the Kirkland Police repeatedly for 35 to 40 minutes.

We cannot say from this record that there is a substantial likelihood that the inadmissible credibility testimony changed the outcome of the trial.

Finally, Kleinsmith does not explain why a timely curative instruction would not have eliminated any resulting prejudice. Had counsel objected the first time the prosecutor asked a witness about the consistency of Trowbridge's statements, the objection would have been sustained and not asked again. Moreover, the jury could have been instructed to disregard any testimony regarding this issue. The questions were not so flagrant or ill-intentioned that a curative instruction would have been futile in remedying any prejudice.

B. Misconduct Related to the Law of the Case

Kleinsmith further contends that the prosecutor misstated the law of the case during closing argument. In his closing argument, the prosecutor said:

> As I said before, Ms. Trowbridge talked to Ms. Weber. She told Ms. Weber what had just happened. She talked to Corporal Baxter, she talked to Detective Carlson, she talked to Officer Voss, and then she talked to Detective Carlson again and gave a recorded statement which was then transcribed. And then she testified in front of you under oath yesterday. And each and every time, she's consistent. The details are consistent.

Kleinsmith alleges that referencing the consistency of Trowbridge's testimony during the closing argument was not only improper but misstated the law of the case as set out in Instruction No. 1. Kleinsmith did not object to these statements. On appeal, Kleinsmith alleges that the prosecutor essentially instructed the jury to give great weight to the number of times it heard Trowbridge's story from the five different witnesses.

Jury Instruction 1 said in part: "The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify about it." The State asserts that the instructional language on which Kleinsmith relies was merely a guide to the jury for how to evaluate evidence. The State, however, concedes that instructions to which the State does not object become "law of the case," State v. Hickman, 135 Wn.2d 97, 102, 954 P.2d 900 (1998), even if the instructions impose a burden not otherwise required. State v. Johnson, 188 Wn.2d 742, 756, 399 P.3d 507 (2017). The State did not object to Instruction No. 1 proposed by the trial court. The court need not determine whether the language on which Kleinsmith

relies is a statement of law or merely a guide. The State essentially concedes the point.

Misstating bedrock legal principles on which our criminal justice system stands constitutes prosecutorial misconduct. State v. Venegas, 155 Wn. App. 507, 525, 228 P.3d 813 (2010) (misstating the law on presumption of innocence is flagrant misconduct warranting reversal). We do not find the prosecutor's closing argument to be a misstatement of basic criminal law that would render it misconduct. And as indicated above, even if it were misconduct, Kleinsmith has not established that the remark at trial was so flagrant and ill-intentioned that it could not have been cured with a jury instruction. We conclude the closing argument did not prejudice Kleinsmith's right to a fair trial.

## C. Jury Instruction 8

Kleinsmith argues that Instruction 8, the "to-convict" instruction on the elements of assault did not instruct the jury on the element of intent. We reject this argument.

We review errors in jury instructions de novo. State v. Becklin, 163 Wn.2d 519, 525, 182 P.3d 944 (2008). The to-convict instruction generally must contain all essential elements of the crime. State v. Mills, 154 Wn.2d 1, 7-8, 109 P.3d 415 (2005). In State v. Byrd, 125 Wn.2d 707, 715-16, 887 P.2d 396 (1995), the Supreme Court reversed an assault conviction on the ground that former WPIC 35.50, the definition of assault, relieved the State of the burden of proving an element of its case because the jury was not instructed that it had to find that the

defendant acted with the specific intent to cause apprehension or fear of bodily harm. The relevant paragraph of WPIC 35.50 at the time of Byrd's trial provided:

> An assault is also an intentional act, with unlawful force, which creates in another a reasonable apprehension and fear of bodily injury even though the actor did not actually intend to inflict bodily injury.

This paragraph in WPIC 35.50 was deemed to be an erroneous statement of the law because it allowed a jury to find only that the defendant acted intentionally and the result of the act was the creation of a reasonable apprehension and fear of bodily injury, rather than the defendant acted with the intent to create this apprehension or fear. Byrd, 125 Wn.2d at 715.

The instruction in this case did not omit the specific intent element and is distinguishable from the instruction deemed improper in Byrd. Instruction 8 provided in its entirety:

> To convict the defendant of the crime of assault in the second degree, each of the following elements of the crime must be proved beyond a reasonable doubt:
> (1) That on or about December 13, 2016, the defendant assaulted Sara Trowbridge with a deadly weapon; and
> (2) That this act occurred in the State of Washington.
> If you find from the evidence that each of these elements have been proved beyond a reasonable doubt, then it will be your duty to return a verdict of guilty. On the other hand, if, after weighing all of the evidence, you have a reasonable doubt as to any of these elements, then it will be your duty to return a verdict of not guilty.
>
> For purposes of this instruction:
> - *An assault is an act done with the intent to create in another apprehension and fear of bodily injury, and which in fact creates in another a reasonable apprehension and imminent fear of bodily injury even though the actor did not actually intend to inflict bodily injury.*
> - A person acts with intent or intentionally when acting with the objective or purpose to accomplish a result that constitutes a crime.

- Deadly weapon means any weapon, device, instrument, substance, or article, which under the circumstances in which it is used, attempted to be used, or threatened to be used, is readily capable of causing death or substantial bodily harm.

(emphasis added).

Instruction 8 followed the Washington Pattern Jury Instructions (WPIC) for assault in the second degree, WPIC 35.19, the revised pattern jury instruction defining assault, WPIC 35.50, the pattern jury instruction defining intent, WPIC 10.01, and the pattern jury instruction defining "deadly weapon," WPIC 2.06.01. The third paragraph of WPIC 35.50 has been amended to include the specific intent element deemed missing by Byrd. Because Instruction 8 correctly instructed the jury to find that Kleinsmith acted with the specific intent to create apprehension and fear of bodily injury, there was no instructional error requiring reversal.

Affirmed.

WE CONCUR:

Andrus, J.

Leach, J.