# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>　　　　　　　　Respondent,<br><br>　　v.<br><br>D'ANGELO JAIME JIMENEZ,<br><br>　　　　　　　　Appellant. | No. 77719-0-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION<br><br>FILED:  July 15, 2019 |

LEACH, J. — D'Angelo Jaime Jimenez appeals his conviction for rape of a child in the third degree for raping A.B.  At the time of the incident, 19-year-old Jimenez and 15-year-old A.B. were friends.  Jimenez challenges the sufficiency of the evidence supporting his conviction and asserts two evidentiary errors.  First, A.B.'s testimony, her mother's testimony about the text messages her mother exchanged with Jimenez, and nurse examiner Kristine Perry's testimony that A.B. had some vaginal redness after the incident, in addition to the fact that this court defers to the trier of fact on witness credibility, mean sufficient evidence supports Jimenez's conviction.  Second, Perry's testimony that A.B. identified Jimenez as the assailant is admissible under the medical diagnosis or treatment exception to the hearsay rule because A.B. is a child.  Last, Perry's testimony

about A.B.'s chastity violated the trial court's ruling in limine barring the admission of evidence about A.B.'s character but was not prejudicial. We affirm.

## BACKGROUND

A.B. and Jimenez met during the summer of 2015 when A.B. was 15 years old and Jimenez was 19. A.B. told Jimenez that she was 15. A.B.'s mother, Sara Brooks, reminded Jimenez regularly that A.B. was 15. Brooks did not know Jimenez's exact age but knew that he had graduated from high school, so she assumed that he was at least 18. A.B. did not have her own phone, so she used Brooks's phone to text Jimenez. When A.B. wanted to text Jimenez, she asked for Brooks's permission. A.B. testified that she and Jimenez never discussed being more than friends or having sex "because [she] knew [she] wasn't ready."

On July 22, A.B. and Jimenez went to get frozen yogurt in Snohomish. Jimenez picked up A.B. in his car and parked on the side of Tester Road. A.B. testified that Jimenez pulled a bag of "Molly"[1] from the driver's side door and asked if she wanted some. A.B. stated that when she asked him what it did, he said it would make her "happy." He put some Molly on a key and then put it on her tongue. Then he told her that it would make her "horny." A.B. testified that

---

[1] Detective Joan Gwordske testified that "Molly," also known as "Ecstasy" or "MDMA," is methylenedioxymethamphetamine. "[I]t's a stimulant and a hallucinogen and it affects the production of serotonin, dopamine, and norepinephrine inside the body."

this made her feel "terrified." She could hear him snorting Molly after he put some on her tongue.

A.B. testified that Jimenez asked to perform oral sex on her and she said no. After he asked twice more, she said, "[W[hatever, sure." Jimenez pulled off her pants and underwear and put them on the passenger side floor. She stated that he "put my bottom on the middle of the console, and I don't remember what happened after that." She said the Molly "made me feel like I wasn't there. Like—as if I were talking and I didn't know I was talking. . . . [A]nd my vision was just wavy." She testified that the next thing she remembered was "slouching" in the back seat "with my legs going to the left of the back seat and my head was against the window against the right side." She remembered the back driver's side door was open, Jimenez was standing there, and then he got on top of her. She "felt like a pop" and "heard a pop" inside her stomach. When she felt the "pop," "it hurt" and "felt really weird." She did not see Jimenez's penis go inside of her, but she did see him holding his penis standing in the open back driver's side door. She did not know whether he ejaculated or used a condom.

On cross-examination, Jimenez's trial counsel asked A.B. about her written statement to police. A.B. testified that her written statement did not include her testimony that Jimenez asked to perform oral sex on her to which she said no or that he put her on the center console naked from the waist down. She could not explain why she remembered those details during direct examination but not when she was writing her statement for police. Jimenez's trial counsel

-3-

asked, "Is it possible that the oral sex didn't actually happen?" A.B. responded, "It could be possible, but it's just my memory." She also did not know why she did not include in her statement but remembered during direct examination that she told Jimenez to stop when she was in the front seat. And she testified she "could be wrong" about intercourse happening in the backseat.

A.B. testified that she thinks Jimenez was still on top of her and inside of her when her mother texted him saying that she had to come home. Right after the incident, she thought Jimenez had raped her but did not immediately tell anyone. She remembered being scared to do so when she got home because she did not know how her family would react to her doing Molly. She also remembered sitting on the couch when she got home but did not remember about the two days following the incident, like if she felt any pain or if there was any blood in her underwear. Three days after the incident, she felt a burning pain when she urinated. She then told her grandmother what had happened. Her grandmother told Brooks who contacted the police.

Although A.B. testified that she did not remember texting Jimenez the night of the incident, a record of their text messages shows that A.B. texted Jimenez on July 22 around 7:00 p.m., stating, "It's [A.B.] and don't worry, I am ha, ha." He asked her what she was doing and to message him on Facebook. He also asked her if she used the bathroom. In response, she stated, "No, I was cleaning my room, LOL." Jimenez responded, "Well then, LOL, you better, ha, ha, ha." After they exchanged a number of messages about Jimenez watching

soccer and A.B. cleaning, Jimenez again asked her, "[D]id you use the bathroom yet, LOLOL?" A.B.'s last message to Jimenez on July 22 stated, "Yeah, I just did, LOL."

Brooks testified that she also texted with Jimenez on July 22. She first texted Jimenez around 6:00 p.m. when he and A.B. were still together and stated, "[A.B.] ran off without doing her housework. She needs to get home and get her stuff done." Jimenez responded, "Okay, right now?" She responded, "Yeah, right now." And he stated, "Okay. Well we just got to Snohomish, so I guess we will go back." Brooks responded, "Yep. Why did you guys go to Snohomish." And he said, "Get ice cream from this yummy froyo place I know." Brooks stated, "Well, sorry, but she needs to get her stuff done, plus she never asked to go anywhere. She just told me what she was doing." Jimenez replied, Oh, okay," and Brooks stated, "She is not an adult yet, only 15." Jimenez said, "Sorry, I thought you knew we were going." Brooks responded, "Nope." And at 6:40 p.m. Jimenez stated, "On our way." After Jimenez had taken A.B. home, he texted, "Hope she does her chores."

Brooks also testified that the day of the incident, she saw some photographs of A.B. and Jimenez together on Facebook that made her concerned that they were dating. Because of these photos, on July 25, Brooks texted Jimenez, "You need to stop dating my daughter. She just turned 15. You are 19, way too old to even think of my daughter in that way. You do realize that my daughter is under the age of [consent], so you just touching my daughter is

child molestation." He responded, "We are not even dating, we are just good friends. Everyone thinks we are dating because of what people see on Facebook. I already had told her to stop posting. . . . Sorry that we can't be good friends and please don't ever use those words again, very unnecessary." Brooks replied, "[S]he already admitted to it, but she says she broke it off . . . already. You can't bullshit a bullshitter." He stated,

> Yeah, I had told her that we couldn't date because she is younger than me and I am not bullshitting. But, yeah, she liked me, but I couldn't really do much about how someone feels about me. Oh, can only control my feelings. Do you get me? . . . Guess I will just have to not talk to her because of this, I'm sorry.

Brooks responded, "It's more like there will be a sit down with [my fiancé] Darrell and I."

Brooks next texted Jimenez on August 6, after she had learned of the incident. She stated, "I know everything you gave and did to my daughter. You are . . . not the only person who knows. You are not getting away with it, I promise." Jimenez responded,

> [W]hat are you talking about? . . . [W]e really liked each other. She was my best friend I have ever met but now we can't even talk because of something stupid. I'm sorry, please understand. We can talk about this in a calm manner. No need for this to get angry.

Brooks stated,

> You gave her Molly and then proceeded to have oral sex with her and then actual sex. Her clothes have already been taken in to test for DNA [deoxyribonucleic acid]. I also took her in for [a] sexual assault examine [sic]. Tomorrow is her last pregnancy test since you raped her without a condom.

Jimenez replied, "Oh, my God, please don't say that. You know I am the nicest soul you have ever met. Please stop and let's talk about this. . . . Please answer me." Brooks stated, "There isn't anything left to talk about. It is now out of my hands. Quit driving past her waving. Don't pass by our . . . house anymore."

After he repeatedly asked Brooks to call him or answer his call, Brooks texted, "She is 15 and you are almost 20. She is a child and under the age of consent. Do not contact any of us again." Jimenez replied,

> There is no need for you to talk charg[ing] me with rape for a teenage fuck up. I am not some old man in his 30s.' I just graduated from high school. Okay, I'm sorry, but I honestly didn't rape or even try to rape your daughter. I even assured her that I didn't want to because it might not be the right time, and she said it was all right. But yes, I understand where you are. . . . I understand where you are coming from. I'm sorry. Bye.

On July 26, Kristine Perry, a forensic nurse examiner, performed a sexual assault exam on A.B. Perry observed some vaginal redness caused by an inflammatory response to some irritation. Perry testified that the location of the redness meant that the assault most likely occurred while A.B. was on her back.

Detective Joan Gwordske searched Jimenez's car using an alternative light source that illuminates any biohazard material like body fluid inside the vehicle. She took swabs from three different locations in the back seat that luminesced under the light. Washington State Patrol lab technician Carol Vo found that none of the DNA swabbed from Jimenez's car matched his DNA. Vo also analyzed the vaginal swabs taken from A.B. and did not find any male DNA in them.

On October 27, 2017, a jury found Jimenez guilty of rape of a child in the third degree. He appeals.

ANALYSIS

Sufficiency of the Evidence

First, Jimenez challenges the sufficiency of the evidence to support his conviction for rape of a child in the third degree. We disagree.

Whether the State presented sufficient evidence is an issue of law that this court reviews de novo.[2] In reviewing the sufficiency of the evidence, this court determines "whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt."[3] "'When the sufficiency of the evidence is challenged in a criminal case, all reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against the defendant.'"[4] A sufficiency claim admits the truth of the State's evidence and all inferences that reasonably can be drawn from that evidence.[5] We view circumstantial evidence equally as reliable as direct evidence.[6] We defer to the trier of fact on issues of conflicting testimony, credibility of witnesses, and persuasiveness of the evidence.[7]

---

[2] State v. Berg, 181 Wn.2d 857, 867, 337 P.3d 310 (2014).
[3] State v. Kintz, 169 Wn.2d 537, 551, 238 P.3d 470 (2010).
[4] Kintz, 169 Wn.2d at 551 (quoting State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992)).
[5] Kintz, 169 Wn.2d at 551.
[6] Kintz, 169 Wn.2d at 551.
[7] State v. Thomas, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004).

As a preliminary issue, the State appears to claim that this court should not review Jimenez's sufficiency challenge because he did not make this claim in the trial court. But a defendant may raise a constitutional claim for the first time on appeal.[8] A sufficiency claim is a question of constitutional magnitude because its purpose is to "'ensure that the trial court fact finder rationally appl[ied] the constitutional standard required by the due process clause of the Fourteenth Amendment, which allows for conviction of a criminal offense only upon proof beyond a reasonable doubt.'"[9]

Jimenez relies on State v. Alexander,[10] in which a jury convicted Alexander of two counts of first degree rape of a child. On appeal, he asserted that the evidence on count one was insufficient to prove that more than one act of sexual intercourse occurred during the charging period or that digital penetration occurred.[11] In reversing his convictions, this court held that without multiple witnesses' improper testimony and the prosecutor's improper statements, the inconsistencies in the victim's testimony were too extreme and the evidence presented to the jury was too confused to allow the jury to find

---

[8] RAP 2.5(a)(3); State v. Baeza, 100 Wn.2d 487, 488, 670 P.2d 646 (1983).
[9] Berg, 181 Wn.2d at 867 (alterations in original) (internal quotation marks omitted) (quoting State v. Rattana Keo Phuong, 174 Wn. App. 494, 502, 299 P.3d 37 (2013)).
[10] 64 Wn. App. 147, 149, 822 P.2d 1250 (1992).
[11] Alexander, 64 Wn. App. at 157.

Alexander guilty on either count.[12] These inconsistencies related to when the alleged rapes occurred and whether he had touched her inappropriately.[13]

Here, the State had to prove each of the following elements beyond a reasonable doubt to secure a conviction for third degree rape of a child: (1) On July 22, 2015, Jimenez had sexual intercourse with A.B.; (2) A.B. was at least 14 years old but was less than 16 years old at the time of the sexual intercourse and was not married to Jimenez; (3) A.B. was at least 48 months younger than Jimenez; and (4) the rape occurred in Washington state.

Jimenez claims that the State did not prove the first element beyond a reasonable doubt. He asserts that similar to Alexander, A.B.'s testimony was inconsistent and contradictory. Jimenez notes that she did not remember how she got on the console or anything thereafter until she was slouched in the backseat. She felt a "pop" and saw Jimenez holding his penis, but she did not see his penis go inside of her or remember how it felt. She did not include all the details in her written statement to police that she testified about, and she testified that it was possible the oral and vaginal sex might not have happened.

First, unlike the victim's testimony in Alexander, A.B.'s testimony was not contradictory. Although A.B. does not remember many details surrounding the incident and testified that she "could be wrong" that Jimenez had sex with her, her testimony did not contradict what she testified she remembered did happen.

---

[12] Alexander, 64 Wn. App. at 158.
[13] Alexander, 64 Wn. App. at 149-50.

Second, Jimenez's repeated questioning of A.B. by text message on the night of the incident about whether she had gone to the bathroom and the text messages between Brooks and Jimenez provided circumstantial evidence that Jimenez and A.B. had sex. Last, Perry testified that she observed some redness on A.B.'s vagina. Because this court defers to the trier of fact on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence, and any alleged inconsistencies in A.B.'s testimony were not bolstered, like the victim's in <u>Alexander</u>, by improper statements, sufficient evidence supports Jimenez's conviction.

Medical Diagnosis or Treatment Exception to the Hearsay Rule

Next, Jimenez asserts that the trial court improperly admitted Perry's testimony about A.B.'s identification of Jimenez as the assailant and A.B.'s chastity. We conclude that although Perry's testimony about A.B.'s chastity was error, it was not prejudicial.

"'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."[14] Hearsay evidence is inadmissible unless an exception applies.[15] We review a trial court's decision on the admissibility of statements under the hearsay rules for an abuse of discretion.[16] We will not disturb the trial

---

[14] ER 801(c).
[15] ER 802.
[16] <u>State v. Woods</u>, 143 Wn.2d 561, 595, 23 P.3d 1046 (2001).

court's ruling unless we believe that no reasonable judge would have made the same ruling.[17]

At issue here is ER 803(a)(4), the medical diagnosis or treatment exception to the hearsay rule. This exception allows the admission of "[s]tatements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment."[18] A party demonstrates that a statement is "reasonably pertinent to diagnosis or treatment" when "(1) the declarant's motive in making the statement is to promote treatment and (2) the medical professional reasonably relied on the statement for purposes of treatment."[19]

### A. Perry's Testimony about A.B.'s Identification of the Assailant

First, Jimenez contends that the trial court erred in admitting Perry's testimony about A.B.'s identification of Jimenez as the assailant. "Because ER 803(a)(4) pertains to statements 'reasonably pertinent to diagnosis or treatment,' it allows statements regarding causation of injury, but generally not statements attributing fault."[20] Jimenez cites State v. Redmond,[21] in which our Supreme Court held that the trial court abused its discretion by admitting two attributions of

---

[17] Woods, 143 Wn.2d at 595-96.
[18] ER 803(a)(4).
[19] State v. Williams, 137 Wn. App. 736, 746, 154 P.3d 322 (2007).
[20] State v. Redmond, 150 Wn.2d 489, 496, 78 P.3d 1001 (2003).
[21] 150 Wn.2d 489, 497, 78 P.3d 1001 (2003).

fault in the victim's medical records, including the statements that "'an ex-student accosted and dragged Mr. Johnson from his auto'" and "'[Johnson] was accosted in the parking lot by another male.'" When the declarant is a child, however, statements about the identity of the abuser are reasonably necessary to the child's medical treatment because a medical provider needs to know who abused a child to avoid potentially sending her back to the abusive relationship and to treat any psychological injury.[22] For example, in State v. Hopkins,[23] Division Two of this court held that a doctor's testimony about the 13-year-old victim's identification of her abuser was admissible under ER 803(a)(4) because the victim was a child.

Here, the trial court granted the State's motion in limine to allow Perry's testimony about A.B.'s description of the crime but stated, "[W]ith regard to any questions about who did it, the State will have to show authority that allows it." During Perry's direct examination, the prosecutor asked her what A.B. told her about what had happened to her and why she was there. Perry responded, "She told me that she was there because she—her boyfriend had forced intercourse with her." Later, Perry identified A.B.'s boyfriend as Jimenez. Jimenez's trial counsel objected to Perry's first statement and, outside of the presence of the jury, asserted that Perry's testimony violated the court's ruling in limine about the issue. He also asked for a mistrial. The prosecutor responded that Perry's

___

[22] State v. Hopkins, 134 Wn. App. 780, 788, 142 P.3d 1104 (2006).
[23] 134 Wn. App. 780, 787-88, 142 P.3d 1104 (2006).

statement was for purposes of medical diagnosis or treatment because it was pertinent for Perry to know that she was not sending A.B. home with her abuser.

The court denied Jimenez's counsel's request for a mistrial and ruled that Perry's testimony was admissible under ER 803(a)(4) based on our Supreme Court's reasoning in State v. Woods.[24] In Woods, the Court rejected the argument that ER 803(a)(4)'s application is limited to statements related to the diagnoses and treatment of physical injuries and established that it also includes statements related to the diagnoses and treatment of psychological issues.[25]

A.B. was 15 years old at the time of the incident and was thus a child. This means Perry's testimony that A.B. identified Jimenez as the assailant was admissible under ER 803(a)(4) because this information was reasonably related to A.B.'s potential physical and psychological treatment. The trial court did not abuse its discretion by admitting this testimony.

*B. Perry's Testimony About A.B.'s Chastity*

Second, Jimenez claims that the trial court erred in admitting Perry's testimony stating what A.B. told her about her virginity.

During her direct examination, Perry testified that A.B. told her that she and Jimenez broke up two days after the incident. Reading from her report, Perry stated, "'The patient states'—would you like me to say this next part?" The prosecutor told Perry to "[g]o ahead." And Perry testified, "'The patient states

---

[24] 143 Wn.2d 561, 23 P.3d 1046 (2001).
[25] Woods, 143 Wn.2d at 602-03.

she would never have given up her virginity at the age of 15, stating that she was planning on waiting 'a lot longer than this.'"

Outside the presence of the jury, Jimenez's trial counsel objected, claiming this evidence violated the trial court's ruling in limine barring either party from introducing character evidence about A.B.'s "sexual tendencies or sexual history or reputation in the community for sexual morality." He stated Perry's testimony was also a violation of RCW 9A.44.020, the rape shield law, and ER 404(a) and ER 412, concerning the admissibility of character evidence and the victim's past sexual behavior, respectively. He additionally claimed a violation of Jimenez's Sixth Amendment right to confront witnesses against him.[26] He asserted that the State was improperly "back dooring credibility evidence about [A.B.'s] chastity . . . to bolster her credibility." He asked the court to dismiss the case based on a violation of Jimenez's due process rights. The State responded that Perry's testimony was admissible under ER 803(a)(4) because in a rape case, whether a victim has had sex before the incident may relate to her diagnosis or treatment. The trial court did not rule on the objection but, instead, reserved it.

On appeal, Jimenez does not assert a confrontation clause violation and appears to raise only the evidentiary issues that his trial counsel raised below. He also appears to claim cumulative error based on both of his assertions of

_____

[26] "In all criminal prosecutions, the accused shall enjoy the right to . . . be confronted with the witnesses against him." U.S. CONST. amend VI.

-15-

evidentiary error. Perry's testimony that A.B. told her she had been a virgin before the incident does, in fact, violate the trial court's ruling in limine prohibiting either party from introducing evidence about A.B.'s sexual history. Testimony that violates a ruling in limine may require a mistrial if it prejudiced the jury.[27] In determining whether an "irregularity" may have influenced the jury, we evaluate (1) its seriousness, (2) whether the statement was cumulative of other evidence properly admitted, and (3) whether an instruction to disregard it cured any prejudice.[28]

Here, Perry's challenged testimony was not cumulative of other admitted evidence and the trial court did not give a curative instruction because it reserved its ruling on Jimenez's trial counsel's objection. But it is not a serious irregularity. Because A.B.'s testimony about the incident, Brooks's testimony about her text messages with Jimenez, and Perry's testimony about A.B.'s vaginal redness provide sufficient evidence to support Jimenez's conviction, Perry's improper testimony is not sufficiently prejudicial to require a mistrial. Because this testimony is the only error Jimenez identifies, we do not address any claim of cumulative error.

## CONCLUSION

We affirm. Sufficient evidence supports Jimenez's conviction for rape of a child in the third degree. And Perry's testimony about A.B.'s identification of the

---

[27] State v. Escalona, 49 Wn. App. 251, 253-55, 742 P.2d 190 (1987).
[28] Escalona, 49 Wn. App. at 254.

assailant as Jimenez was admissible under ER 803(a)(4).   Although Perry's testimony about A.B.'s chastity violated one of the trial court's rulings in limine, it was not prejudicial.

_Leach, J._

WE CONCUR:

_Mann, ACJ_                                    _Andrus, J._