
IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 37980-9-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| RAMIL AGLES SERRANO, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, J. — Ramil Serrano appeals his convictions for rape of a child in the first degree and child molestation in the first degree. We affirm his convictions but remand for the trial court to strike the interest provision in the judgment and sentence.

## FACTS

Poung Jo Sem has a daughter, S.S.[1] Around April 2016, Ms. Sem allowed a coworker, Ramil Serrano, to live with her and her daughter. S.S. was eight years old at the time. Two years later, Mr. Serrano moved out.

---

[1] To protect the privacy interests of the child victim, we use her initials throughout this opinion. Gen. Order 2012-1 of Division III, *In re the Use of Initials or Pseudonyms for Child Victims or Child Witnesses*, (Wash. Ct. App. June 18, 2012), https://www.courts.wa.gov/ appellate_trial_courts/?fa=atc.genorders_orddisp&ordnumber=2012_001&div=III.

About six months after Mr. Serrano moved out, S.S.'s aunt visited. She spoke with S.S. about "good touch" and "bad touch." Report of Proceedings (RP) at 81. S.S. told her aunt that Mr. Serrano had touched her in a bad way. The aunt told Ms. Sem, and she reported it to police. In September 2018, Lisa Wahl, a sexual assault nurse examiner (SANE), performed a sexual assault evaluation on S.S.

Police arrested Mr. Serrano and the State charged him with one count of child rape in the first degree and one count of child molestation in the first degree. Mr. Serrano waived his right to a jury trial and the case proceeded to a bench trial.

At trial, Ms. Wahl testified that she spoke with S.S. at length about her body, covering everything from head to toe. S.S.'s demeanor changed when she began talking about why she was there and she had difficulty talking about what had happened.

When asked who they were talking about, S.S. wrote the name "Ramil." RP at 155. Ms. Wahl and S.S. then went over the male and female bodies with anatomically correct drawings to confirm which body parts were involved. S.S. told Ms. Wahl that she was in her house when Mr. Serrano put his penis in her vagina and this caused her pain. S.S. told Ms. Wahl that Ramil had done this over 10 times.

Ms. Wahl testified about her physical examination of S.S. She found S.S. to be healthy and normal, which she said was not unusual in cases where children delayed

disclosure of their abuse.  A blood test revealed that S.S. had herpes simplex virus one.

Ms. Wahl testified that the virus did not mean that S.S. was sexually abused, but could be

the result of skin to skin contact.

Detective Jeff Weiss testified that he interviewed Mr. Serrano twice and both

interviews were tape recorded.  During the second interview, Mr. Serrano broke down

and started crying.  He admitted that he and S.S. liked to wrestle upstairs on the bed.  He

said that "[S.S.] wore silky bottom pajamas, which were really thin and tight, and when

he—when [S.S.] pulled his pants down she was on top of him and obviously his penis

was up against her vagina."  RP at 134.

S.S. testified that when her mother was at work she and Ramil would watch TV on

her mother's bed.  While watching TV, he would tell her to take off her clothes and he

would take his clothes off, too.  S.S. testified that Ramil would then put his privates on

her privates, on her skin, and put his privates in her privates.  When asked what "privates"

meant, S.S. gestured to her genital area.  RP at 52.  S.S. testified that she would be laying

down on the bed and Ramil would be in front of her and she would be on her back.  S.S.

described the feeling of Ramil putting his privates inside hers as "weird."  RP at 58.  She

testified this had happened "a lot" with Ramil.  RP at 72.

3

The trial court convicted Mr. Serrano on both counts. It found S.S.'s testimony credible and Mr. Serrano's testimony not credible. It found that Mr. Serrano had placed his penis on S.S.'s bare skin without penetration and that it was clearly done for sexual gratification purposes. It additionally found that Mr. Serrano had penetrated S.S. multiple times.

The trial court sentenced Mr. Serrano to 160 months of confinement. In addition, it imposed nonrestitution financial obligations and ordered interest to accrue on those obligations. Mr. Serrano timely appealed.

ANALYSIS

SUFFICIENCY OF THE EVIDENCE

Mr. Serrano contends there was insufficient evidence to find him guilty of either count. We disagree.

When reviewing a claim of insufficiency of the evidence, this court looks to whether the facts, viewed in the light most favorable to the State, would allow a trier of fact to find a defendant guilty beyond a reasonable doubt. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). "A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." *Id.*

When dealing with instances of conflicting testimony, this court defers to the finder of fact to evaluate the persuasiveness of the arguments and testimony. *State v. Homan*, 181 Wn.2d 102, 106, 330 P.3d 182 (2014). This court does not review the credibility determinations made by the trier of fact, which retains sole purview over such determinations. *State v. Cardenas-Flores*, 189 Wn.2d 243, 266, 401 P.3d 19 (2017).

In general, Mr. Serrano contends that S.S.'s testimony was contradictory and vague. He notes that S.S. interchangeably used the terms "in" and "on" when describing the sexual contact, she claimed she was abused on over 10 occasions yet her physical examination was normal, she described pain to Ms. Wahl but not to the court, and her testimony was so timid that she was asked several times to repeat what she said or speak louder.

We note that S.S. was 11 years old when she testified. One would expect a young girl to be very uncomfortable talking about sexual abuse to a group of mostly strangers. Also, her use of the terms "in" and "on" may well have been accurate and coincides with the trial court convicting Serrano of both child rape and child molestation.

We also note that six months had elapsed between when Mr. Serrano moved out and when Ms. Wahl physically examined S.S. That allowed time for minor injuries to

heal.  Ms. Wahl testified that a significant percentage of child victims show no physical trauma because of delayed reporting.

Mr. Serrano is correct that S.S. described the sensations differently to Ms. Wahl and to the court.  To Ms. Wahl, S.S. said the penetration was painful.  To the court, S.S. testified the penetration felt weird.

Mr. Serrano argues that the inconsistencies here are comparable to those in *State v. Alexander*, 64 Wn. App. 147, 822 P.2d 1250 (1992).  We disagree.

In *Alexander*, a defendant was charged with rape of a child.  *Id.* at 149.  The child had initially alleged two incidents occurred, one in a bathtub and one with baby oil.  *Id.* at 149-50.  During the trial, the child testified and said nothing inappropriate happened in the bathtub or with baby oil.  *Id.* at 150.  She also seemed to be inconsistent with the dates the incidents supposedly took place.  *Id.* at 149.  We held that the testimony was extremely inconsistent and no reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt.  *Id.* at 157-58.

Here, S.S.'s testimony never strayed from her initial assertion that Mr. Serrano had sexual contact with her on numerous occasions.  She described Mr. Serrano as having placed his penis both on her vagina and in her vagina.  Although S.S. described the sensation caused by penetration differently to Ms. Wahl and the court, this inconsistency

6

is far less than those we saw in *Alexander*. We conclude that S.S.'s and Ms. Wahl's

testimonies were sufficient for a reasonable trier of fact to find, beyond a reasonable

doubt, that Mr. Serrano was guilty of rape of a child in the first degree.

Mr. Serrano also argues there was no evidence of sexual gratification offered by

the State and thus no evidence of intimate contact. When dealing with a charge of child

molestation in the first degree, this court looks to whether the contact between the

defendant and the victim was intimate.

> Contact is "intimate" within the meaning of the statute if the conduct is of
> such a nature that a person of common intelligence could fairly be expected
> to know that, under the circumstances, the parts touched were intimate and
> therefore the touching was improper. A jury may determine that parts of the
> body in close proximity to the primary erogenous areas are intimate parts.
> Proof that an unrelated adult with no caretaking function has touched the
> intimate parts of a child supports the inference the touch was for the
> purpose of sexual gratification, although we require additional proof of
> sexual purpose when clothes cover the intimate part touched.

*State v. Harstad*, 153 Wn. App. 10, 21, 218 P.3d 624 (2009) (internal quotation marks

and footnotes omitted).

Mr. Serrano argues that he told detectives his pants were pulled down by S.S.

while wrestling and his penis only touched her vagina over her pajamas; thus, additional

proof of sexual purpose was required. However, S.S. testified during trial that Mr.

Serrano told her to take off her clothes. She testified that Mr. Serrano took off his

7

clothes. She also testified that he put his penis both on and in her vagina. The trial court found her testimony to be credible and found Mr. Serrano's testimony not to be credible. We defer to the trial court's determinations of credibility. We conclude that the evidence was sufficient for a reasonable trier of fact to find, beyond a reasonable doubt, that Mr. Serrano was guilty of child molestation in the first degree.

INTEREST ON NONRESTITUTION LEGAL FINANCIAL OBLIGATIONS (LFOS)

Mr. Serrano contends the trial court erred in imposing interest on his nonrestitution LFOs. RCW 10.82.090(1) eliminates accrual of interest on nonrestitution LFOs. The State concedes this issue. We accept the State's concession.

STATEMENT OF ADDITIONAL GROUNDS FOR REVIEW (SAG): DOUBLE JEOPARDY

In his SAG, Mr. Serrano contends that both of his convictions should be reversed because the trial court *could have* convicted him of child rape based on one of the same incidents that formed the basis for his child molestation conviction. We disagree.

A person may not be placed in jeopardy of being punished twice for the same offense. U.S. CONST. amend. V; WASH. CONST. art. I, § 9; *State v. Land*, 172 Wn. App. 593, 598, 295 P.3d 782 (2013). However, as the court in *Land* held, child molestation and rape of a child are two separate offenses. *Id.* at 599. If the only evidence provided is of sexual intercourse, then only one conviction can stand. *Id.* at 601. However, even

where the acts happened at the same time and involved the same parties, the act of

molestation can be distinct from the act of rape if there is evidence of sexual touching

separate from intercourse. *Id.* at 601-02.

Here, there was evidence of both molestation and rape. Construing the evidence in

the light most favorable to the State, Mr. Serrano put his privates both "on" S.S. and "in"

S.S., and this happened on several occasions. The evidence refutes any claim that Mr.

Serrano is being punished twice for the same offense.

Affirmed, but remanded to strike interest.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

_____
Lawrence-Berrey, J.

WE CONCUR:

_____        _____
Pennell, C.J.                          Fearing, J.