**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>                Respondent,<br><br>       v.<br><br>JOHN HOWARD SCANNELL,<br><br>                Appellant. | No. 84989-1-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

MANN, J. — John Scannell appeals his conviction for one count of rape of a child in the first degree and two counts of child molestation in the first degree. Scannell argues: (1) the trial court violated his constitutional rights by excluding white jurors from a GR 37 objection; (2) the trial court abused its discretion by admitting hearsay statements and a medical report; (3) the trial court abused its discretion by admitting an irrelevant and prejudicial photograph; and (4) the State committed prosecutorial misconduct. Scannell also contends that remand is necessary to strike certain legal financial obligations. We remand to strike the DNA fee and the victim penalty assessment (VPA) and otherwise affirm.

I

In 2014, Scannell began living with his girlfriend R.F. and her children, including M.E.O. Scannell was arrested for domestic violence against R.F. in 2017. He no longer lived with R.F. or the children after his arrest. In June 2017, M.E.O. disclosed to R.F. that while Scannell lived with them he came into her bedroom in the early morning and would take off her pants and kiss and lick her genitals. At the time of the incidents, M.E.O. was between 8 and 11 years old. On September 6, 2017, R.F. reported the sexual abuse to the Everett Police Department.

M.E.O. was interviewed at Dawson Place by Child Advocacy Center Interviewer Gina Coslett. M.E.O. disclosed that Scannell would enter her bedroom and get in bed with her and would touch her chest and thighs. M.E.O. said Scannell would remove her pajamas and underwear and lick her genitals nearly every night, or every other night, and that Scannell would stop when her alarm would go off. M.E.O. said she wrote about the sexual abuse in her diary.

On September 7, 2017, M.E.O. was seen for a forensic examination by Christa Kleiner, a pediatric nurse practitioner working for the Providence Intervention Center for Assault and Abuse.

In November 2017, Scannell completed a voluntary interview with police during which he denied the allegations.

Scannell was initially charged by information with one count of first degree child molestation. The information was later amended to include a second charge of first degree child molestation and a charge of first degree rape of a child.

The jury found Scannell guilty on all three counts. Scannell appeals.

II

Scannell argues that the trial court created a racially biased jury selection procedure by preemptively excluding all white jurors from GR 37's reach.[1]  Because Scannell did not object to the trial court's procedure or object to a peremptory challenge under GR 37, he waives this argument.

During voir dire, the trial court explained the process for making an objection to a peremptory challenge under GR 37 and noted that if a peremptory challenge was made for certain jurors the trial court would raise a GR 37 objection on its own:

> Mr. Boska will write down his first peremptory, pass it to counsel, counsel will circle whether they have a GR 37 objection.  So far, I have noticed that Juror No. 4, Juror No. 9, Juror No. 32 are subject to GR 37, so if it's one of those jurors, the Court will, regardless of whether the Defense has an objection, will want to discuss that peremptory outside of the presence of the jurors.  Those are the ones that I have noticed.  Of course, if you believe there is another GR 37 objection for your juror, feel free to circle the right one.
>
> So for Juror No. 4, Juror No. 9, and Juror No. 32, if any of those are challenged, peremptory challenges, we'll have to excuse the jurors and discuss it.
>            . . . .
> So, if there's no objection from opposing counsel, you can announce your peremptory unless it's Juror No. 4, 9, or 32.

The trial court again told counsel that they may raise an objection under GR 37 for any juror:

---

[1] The purpose of GR 37 is to "eliminate the unfair exclusion of potential jurors based on race or ethnicity."  GR 37(a).  Any party, or the trial court itself, may object to the "use of a peremptory challenge to raise the issue of improper bias."  GR 37(c).  An objection must be made by citation to the rule.  Any discussion of the objection must take place "outside the presence of the [potential jury] panel."  GR 37(c).  The trial court then evaluates "the reasons given to justify the peremptory challenge in light of the totality of the circumstances."  GR 37(e).  The peremptory challenge must be denied "if the court determines that an objective observer could view race or ethnicity as a factor in the use of the peremptory challenge."  GR 37(e).

Anytime the parties believe someone is subject to GR 37 that I have not noted, you can certainly object on your own on the worksheet as well or let me know in advance as well.

Scannell did not object to the procedure proposed by the trial court. Nor did he object to any peremptory challenges under GR 37.

Under RAP 2.5(a), this court may refuse to review any claim of error that was not raised in the trial court. The rule, however, allows a party to raise for the first time on appeal a "manifest error affecting a constitutional right." RAP 2.5(a)(3). We must evaluate "the asserted claim and assess whether, if correct, it implicates a constitutional interest as compared to another form of trial error." State v. O'Hara, 167 Wn.2d 91, 98, 217 P.3d 756 (2009). But there is no constitutional right to a peremptory challenge under either the United States Constitution or the Washington Constitution. State v. Booth, 22 Wn. App. 2d 565, 581, 510 P.3d 1025 (2022). Consequently, the exception under RAP 2.5(a)(3) does not apply and Scannell waived this argument.[2]

Scannell relies on State v. Zamora, 199 Wn.2d 698, 716, 512 P.3d 512 (2022), and argues that the failure to object does not preclude this court's consideration of the issue or prevent reversal. But Zamora is distinguishable. In Zamora, the Supreme Court held that a prosecutor's racist remarks about "illegal immigration" during voir dire required reversal without showing prejudice. 199 Wn.2d at 719-20, 722-23. The Court

---

[2] We note, however, that the trial court's effort to call out several jurors as being "subject to GR 37" at least raises the implication that the trial court believed that GR 37 applied only to those it perceived as Black, Indigenous, or People of Color (BIPOC). Here, the trial court's preliminary designation of jurors subject to GR 37 based on its perception is contrary to the purpose of GR 37. See State v. Walton, 29 Wn. App. 2d 789, 799-800, 542 P.3d 1041, review denied, 3 Wn.3d 1025 (2024) (holding the plain language of GR 37 applies to any peremptory challenge where race or ethnicity could be a factor and is not limited to BIPOC jurors). Trial courts should not focus the scope of GR 37 on any particular juror before a peremptory challenge and further inquiry as to that particular juror has been made.

also held that defense counsel's failure to object to the prosecutor's misconduct did not waive Zamora's constitutional right to a fair trial: "we will not skirt the responsibility of upholding a defendant's constitutional right because defense counsel failed to appreciate the impropriety of the prosecutor's conduct." Zamora, 199 Wn.2d at 717.

But here, Scannell is not arguing that there was race-based prosecutorial misconduct during voir dire. Scannell is instead asserting that the trial court's understanding of GR 37 and its chosen process resulted in a violation of equal protection. But the trial court twice told counsel that despite the court's identifying three potential jurors it believed were subject to GR 37, if either party believed another potential juror was subject to GR 37, they should identify them outside the presence of the jury. Scannell's counsel did not identify any other potential juror that it believed were subject to GR 37, or object to any peremptory challenge based on GR 37. Because Scannell failed to raise a GR 37 objection to a peremptory challenge, the record is insufficient to address the merits of his claim.

III

Scannell argues the trial court erred by admitting M.E.O.'s hearsay statements to Nurse Kleiner. We disagree.

A

The State moved pretrial to admit M.E.O.'s statements to Kleiner under the hearsay exception for statements made pursuant to medical diagnosis and treatment. Scannell objected arguing that because of the delay in reporting, the examination was not for medical treatment, but for gathering evidence. The trial court granted the State's motion, explaining:

> I agree with the analysis that no matter if it is ill advised for a mother to agree to her child's request to wait to disclose something, a medical exam of a child that alleges sexual abuse is primarily done for purposes of medical diagnosis and treatment, which can include examination for and does include examination for sexually transmitted diseases as well as other types of medical treatment to include other therapy.

After learning that Kleiner did not have a recollection of her examination of M.E.O., the State sought permission for Kleiner to read from her written report as a past recorded recollection. The trial court heard Kleiner's testimony initially as an offer of proof outside the jury's presence. Kleiner testified that she completed a medical report related to M.E.O.'s exam but that she did not have an independent memory of M.E.O.'s statements made during the examination. Kleiner described the process to create a report involved using a template that is entered into software for medical records within two weeks. Kleiner also testified that when she made her handwritten notes she had a memory of M.E.O.'s statements because they occurred the same day. On cross-examination, Kleiner stated that the report listed M.E.O.'s date of birth incorrectly and that her handwritten notes had since been shredded.

The trial court determined Kleiner's testimony could not be admitted as a recorded recollection under ER 803(a)(5). The trial court determined, however, that Kleiner's report was admissible as a business record, and as statements made by M.E.O. for the purpose of medical diagnosis or treatment. Scannell objected to the admission of information from the exam.

In the jury's presence, Kleiner testified that the report stated M.E.O. was interviewed independently from her mother and read from the report the initial questions

and answers from the interview in which M.E.O. made statements consistent with the forensic interview and her testimony.

B

This court reviews evidentiary rulings for an abuse of discretion and "will not reverse the trial court's decision unless . . . no reasonable judge would have made the same ruling." State v. Burke, 196 Wn.2d 712, 741, 478 P.3d 1096 (2021).

"'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." ER 801. "Hearsay is not admissible except as provided by these rules, by other court rules, or by statute." ER 802. Double hearsay is not excluded by the rule if each part of the combined statements falls within an exception. ER 805. One exception to the hearsay rule is a statement "made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof, insofar as reasonably pertinent to diagnosis or treatment." ER 803(a)(4).

The "test for statements made for medical diagnosis or treatments considers the subjective purposes of both the declarant and the medical professional." Burke, 196 Wn.2d at 740. A statement is reasonably pertinent to medical diagnosis or treatment if the motive behind the statement is to promote treatment and the medical professional relied on it for treatment. Burke, 196 Wn.2d at 740. "Statements attributing fault are generally inadmissible under this exception, but statements 'disclosing the identity of a closely-related perpetrator' may be reasonably pertinent to treatment in certain situations like domestic violence or sexual abuse 'because part of reasonable treatment

-7-

and therapy is to prevent recurrence and future injury.'" Burke, 196 Wn.2d at 740-41 (quoting State v. Williams, 137 Wn. App. 736, 746, 154 P.3d 322 (2007)).

In Burke, the victim went to an emergency room for treatment after being raped and was examined by a sexual assault nurse examiner. The court determined that most of the victim's statements to the nurse were properly admitted as reasonably pertinent to medical diagnosis or treatment because they related to pain level, allergies, and details about the incident such as penetration, ejaculation, grabbing, and contraception. Burke, 196 Wn.2d at 741. But the victim also made a statement describing the assailant and our Supreme Court held that it was not reasonably pertinent to medical diagnosis or treatment because there was no evidence that K.E.H. "was motivated to identify a closely related perpetrator who might pose a continued danger to her." Burke, 196 Wn.2d at 742-43.

And even if the perpetrator is known to the victim, not "all those who undergo a sexual assault examination do so for the subjective purpose of promoting medical treatment." State v. Arumugam, 30 Wn. App. 2d 411, 430, 545 P.3d 363, review denied, 3 Wn.3d 1023 (2024). In Arumugam, the child victim was examined six years after the sexual assault. The nurse testified to the contents of the report and read the details of the sexual assault without identifying the defendant, T.M.'s father, as the perpetrator. Arumugam, 30 Wn. App. 2d at 423. The record also established that the victim did not want to be examined because he told the nurse he "felt his body was fine" and "did not feel he needed to do the exam." Arumugam, 30 Wn. App. 2d at 428. Based on the facts, this court distinguished Burke and held that "[n]othing in Burke

commanded the trial court to impute to the victim a desire or purpose that the victim understandably disclaimed." Arumugam, 30 Wn. App. 2d at 430.

Here, the admitted evidence is double hearsay consisting of M.E.O.'s statements to Kleiner and the report. Kleiner testified about the exam process:

> So, the patient would come to a medical site of care, whether that be an emergency room or a clinic, and they would provide a history of what occurred. We would ask them something called a review of systems, meaning do they have any past illnesses, injuries, do they have any current illnesses or injuries, and how is that related to what they are being seen for.
>
> We obtain a social history, we obtain a medication history, ask them if they have any allergies.
>
> At that point, we make recommendations to either perform a physical exam, to collect forensic evidence if it is in the forensic evidence window collection time based on the history they provided.

Kleiner testified that she conducted an exam on M.E.O. and subsequently created a report related to the exam but that she had no independent recollection of the details of the exam.

Kleiner testified that according with standard process she first obtained a history from M.E.O. and read from the report the following:

> Me: Do you know why you are here.
>
> Patient: Probably because of my prediabetic.
> . . . .
> Me: I explained that she was here for a checkup to assure she was healthy and safe and that we talk about safety rules.
> . . . .
> Me: I told the patient the other safety rule we talk about is the private area and asked has anyone ever touched your private area.
>
> Asterisk. Patient became quiet and looked down. She then responded.

> Patient: My mom's ex-boyfriend would touch me. The only people who know are my friends and my mom.

Kleiner read from the report M.E.O.'s statements describing the touching consistent with her testimony and report to police. Kleiner continued to read from the report:

> Me: Do you feel safe at your mom's house?
>
> Patient: I do now that he is gone.
>
> Me: Have you ever thought about harming yourself?
>
> [Patient]: When he was there, I thought about hanging myself or cutting myself.

Kleiner also testified that the report stated a physical exam was conducted and no physical injuries were documented.

Scannell attempts to distinguish Burke by arguing that M.E.O.'s statements were not made for medical diagnosis or treatment because there was no emergency, the interview occurred months after the incidents, and not at a hospital-based location. But Scannell fails to persuade that an emergency situation or immediate reporting is required for the medical hearsay exception to apply.

M.E.O.'s statement about prediabetes indicates she knew the exam was a medical exam and, unlike Arumugam, there is no indication in the record that M.E.O. did not want to be examined. M.E.O.'s statement that her mom's ex-boyfriend did the touching was pertinent to medical diagnosis and treatment because M.E.O. knew her abuser. See State v. Hopkins, 134 Wn. App. 780, 788, 142 P.3d 1104 (2006) ("The rationale is that a medical provider needs to know who abused a child in order to avoid sending the child back to the abusive relationship and to treat the child's psychological injury."). Because M.E.O. was a child alleging abuse, Kleiner reasonably relied on the

statements to properly treat M.E.O. physically and mentally. Thus, M.E.O.'s statements were reasonably pertinent to medical treatment and were reasonably relied upon by Kleiner.

C

Scannell also argues the trial court erred by admitting the report as a business record because it contained subjective and leading information rather than objective information such as a lab report. We disagree.

Business records "of an act, condition, or event" may be admitted "if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission." RCW 5.45.020. "Medical records are admissible under the business records exception as long as they are properly identified and otherwise relevant." State v. Alexander, 64 Wn. App. 147, 156, 822 P.2d 1250 (1992). "Great weight is given to the trial court's decision to admit or exclude evidence under the business records exception." Alexander, 64 Wn. App. at 156.

Kleiner's testimony identified the report and established how she prepared the report in the regular course of business. She described preparing the report from her notes taken the day of the exam. Additionally, the admitted portions of the report need not be objective when the content is otherwise admissible under ER 803(a)(4), as it is here.

For these reasons, the trial court did not abuse its discretion by admitting M.E.O.'s statements to Kleiner or the report.

IV

During the testimony of the forensic examiner from Dawson Place, Coslett, the State offered a photograph taken of M.E.O. sitting next to a comfort dog at the time of the interview. M.E.O. was 11 years old at the time of the photograph. She was 17 years old at the time of trial. The State sought to admit the photograph to "establish the physical appearance of the child at the time of the incident." Scannell objected and argued the photograph was irrelevant and prejudicial. The trial court admitted the photograph because it was "minimally relevant" and not prejudicial.

Scannell argues that the trial court erred in admitting a prejudicial and irrelevant photograph of M.E.O. as a child. We agree with Scannell that the photograph was irrelevant but admission of the photograph was harmless error.

A

A trial court's relevancy determinations are reviewed for an abuse of discretion. State v. Luvene, 127 Wn.2d 690, 706-7, 903 P.2d 960 (1995). Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable." ER 401. Relevant evidence is admissible except as limited by constitutional requirements or as provided by statute, rule, or regulation. ER 402. "The threshold to admit relevant evidence is very low. Even minimally relevant evidence is admissible." State v. Darden, 145 Wn.2d 612, 621, 41 P.3d 1189 (2002).

Relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." ER 403. "When evidence is likely to stimulate an emotional response rather than a rational decision, a danger of unfair prejudice exists." State v. Powell, 126 Wn.2d 244, 264, 893 P.2d 615 (1995). Trial courts have considerable discretion to consider the relevancy of evidence and to balance the probative value of the evidence against its possible prejudicial impact. State v. Barry, 184 Wn. App. 790, 801, 339 P.3d 200 (2014).

B

Here, the trial court admitted the photograph as minimally relevant:

I don't necessarily view the photo as making the child look particularly sympathetic. I do recall there was testimony, and if I'm not mistaken, it was brought up with a cross-examination question about remembering talking to a lady with the dog, and I think that's how the dog came up, if I'm not mistaken, so I don't think the fact that there is a dog on the couch is particularly prejudicial since the jury has already heard there was a conversation with a dog, and not because this case has taken so long to get to trial and the interview was years ago, but because there seemed to have been some difference in testimony from witnesses thus far about when this witness began puberty.

I think that it can be very minimally relevant to show the jury what she looked like at the time she spoke to Ms. Coslett.

The physical appearance of M.E.O. at the time the photograph was taken is irrelevant to the crimes charged. Whether or not M.E.O. had gone through puberty or had her first menstruation cannot be gleaned from the photograph nor is it relevant to whether M.E.O. was in fact under twelve years old at the time of the incidents.[3] Her age at the time of the incidents is material but her age was not disputed. The fact M.E.O.

---

[3] One element of all three counts required the jury to find beyond a reasonable doubt that M.E.O. was less than 12 years old at the time of the sexual contact.

was interviewed by Coslett was not disputed nor did the parties dispute her age at the time of the interview. Neither her appearance at the time the photograph was taken or whether M.E.O. had gone through puberty make a fact of consequence more or less probable. Thus, the trial court abused its discretion when it determined the photograph was minimally relevant.

But improper admission of evidence constitutes harmless error if the evidence is of minor significance in reference to the evidence as a whole. State v. Neal, 144 Wn.2d 600, 611, 30 P.3d 1255 (2001). Such an error requires reversal only if, within reasonable probabilities, it materially affected the outcome of the trial. Barry, 184 Wn. App. at 802.

Here, the error was harmless because the photograph had minor significance considering the evidence as a whole. M.E.O. and Coslett testified that the interview took place with a comfort dog in the room. The photograph only confirmed what the jury already knew from other properly admitted evidence—that M.E.O. was a child when she was interviewed by Coslett and there was a dog present. Thus, it is not a reasonable probability that admission of the photograph materially affected the outcome of the trial.

V

A

Scannell argues the State committed prosecutorial misconduct. First, Scannell asserts the State improperly misstated the law by telling jurors to consider the evidence and credibility "through the filters of a child," because it urged the jury to accept a lower standard of proof. Scannell asserts the improper argument reduced the standard of

reasonable doubt and the presumption of innocence. Scannell also argues the prosecutor improperly appealed to the jury's passion. We disagree.

"To prevail on a claim of prosecutorial misconduct, the defendant must establish 'that the prosecutor's conduct was both improper and prejudicial in the context of the entire record and the circumstances at trial.'" State v. Thorgerson, 172 Wn.2d 438, 442, 258 P.3d 43 (2011) (quoting State v. Magers, 164 Wn.2d 174, 191, 189 P.3d 126 (2008)). "'If the defendant objected at trial, the defendant must show that the prosecutor's misconduct resulted in prejudice that had a substantial likelihood of affecting the jury's verdict.'" State v. Allen, 182 Wn.2d 364, 373, 341 P.3d 268 (2015) (quoting State v. Emery, 174 Wn.2d 741, 760, 278 P.3d 653 (2012)). If "the defendant failed to object, 'the defendant is deemed to have waived any error, unless the prosecutor's misconduct was so flagrant and ill intentioned that an instruction could not have cured the resulting prejudice.'" Allen, 182 Wn.2d at 375 (quoting Emery, 174 Wn.2d at 760-61).

"As a quasi-judicial officer representing the people of the State, a prosecutor has a duty to act impartially in the interest only of justice." State v. Warren, 165 Wn.2d 17, 27, 195 P.3d 940 (2008). "A prosecuting attorney commits misconduct by misstating the law." Allen, 182 Wn.2d at 373. "In closing argument the prosecuting attorney has wide latitude to argue reasonable inferences from the evidence, including evidence respecting the credibility of witnesses." Thorgerson, 172 Wn.2d at 448. "[A] prosecutor may comment on a witness's veracity as long as a personal opinion is not expressed and as long as the comments are not intended to incite the passion of the jury." State v. Stith, 71 Wn. App. 14, 21, 856 P.2d 415 (1993).

In State v. Lindsay, 180 Wn.2d 423, 434, 326 P.3d 125 (2014), the prosecutor used a puzzle analogy to explain reasonable doubt using specific percentages, "you can be halfway done with that puzzle and you know beyond a reasonable doubt . . . you could have 50 percent of those puzzle pieces missing and you know." The court concluded that quantifying the standard of proof in such a way was improper. Lindsay, 180 Wn.2d at 436.

In State v. Anderson, 153 Wn. App. 417, 424, 220 P.3d 1273 (2009), the prosecutor argued to the jury that "in order to find the defendant not guilty, you have to say, 'I don't believe the defendant is guilty because,' and then you have to fill in the blank." The court concluded that this statement was improper. Anderson, 153 Wn. App. at 431. It reasoned that the prosecutor's statement improperly shifted the burden of proof by placing the onus on Anderson to provide a reason to the jury for why he was not guilty. Anderson, 153 Wn. App. at 431.

Here, during closing argument, the prosecutor spoke to the jury about evaluating the credibility of the evidence:

> Ultimately, that's going to be your call, but I ask you when you are participating in that process, remember that everyone has their own filter on the reality that they are perceiving as they are perceiving it. When you are evaluating the testimony of [M.E.O.], don't evaluate it through the filter of a 17-year-old; evaluate it through the filter of a person who, at the time of the events, seven, eight years ago, was nine, ten, eleven.

Scannell did not object and thus must show the comment was so flagrant and ill intentioned that an instruction could not have cured any resulting prejudice.

Later, in closing argument related to count 3, the prosecutor again addressed evidence and credibility:

> MR. BOSKA: Think about the evidence and credibility through the filters of a child. We know as jurors that these kinds of acts do occur in our society. They—
>
> MS. SLOAN: Objection, passions of the jury.
>
> MR. BOSKA: It's argument, your Honor.
>
> THE COURT: Jurors, the statements of counsel in closing argument are not facts nor the law. The facts are what you will find in your deliberations, and the law is in my instructions to you. You must disregard any statements that are not consistent with that. You may proceed.
>
> MR. BOSKA: These acts took place in a dark bedroom in the early morning hours before anyone else was awake, indeed, before Mr. Scannell even knew that Ms. Olsen was awake. Think about her testimony. Think about it through the filter of a child's reality and a child's experience in evaluating the credibility of her testimony.

Considering the record as a whole and the context of the argument, the prosecutor's comments do not misstate the law or appeal to the passions of the jury. Scannell's theory of defense was that M.E.O. fabricated the incidents, attacking her credibility. Unlike the puzzle analogy in Lindsay, or the comments in Anderson, the prosecutor did not comment on the burden of proof or the guilt of Scannell. Instead, the prosecutor urged the jury to remember the circumstances surrounding M.E.O.'s testimony when considering her credibility such as her age at the time of the events which occurred years prior in contrast to her age when she testified. Even if such comments were improper, Scannell provides no authority to persuade the comment could not have been cured by an instruction.

Scannell also fails to persuade the comments resulted in prejudice that likely affected the verdict. The prosecutor's comments about "filter of a child" in context of the entire closing argument and the record as a whole relates to the credibility of M.E.O.

-17-

and the defense theory that she fabricated the incidents. And the trial court instructed that the comments were not fact or law.

B

Second, Scannell argues the State improperly vouched when it gave personal beliefs as to the credibility of M.E.O. and implied there was other evidence the jury had not seen. We disagree.

"Improper vouching occurs when the prosecutor expresses a personal belief in the veracity of a witness or indicates that evidence not presented at trial supports the testimony of a witness." Thorgerson, 172 Wn.2d at 443. In State v. Robinson, 189 Wn. App. 877, 893-94, 359 P.3d 874 (2015), this court determined that a prosecutor's statement that a witness had no motive to lie was not impermissible vouching because it was "simply drawing inferences from the evidence at trial, not implying knowledge of facts outside the evidence."

In State v. Allen, 161 Wn. App. 727, 255 P.3d 784 (2011), aff'd, 176 Wn.2d 611, 294 P.3d 679 (2013), this court held that the prosecutor did not vouch by describing a witness as "not a flake . . . not some derelict," because it was an inference based on evidence introduced at trial. In Warren, our Supreme Court held that closing argument that testimony by the complaining witness was a "badge of truth" and had a "ring of truth" was proper because it was based on evidence introduced at trial and it concerned credibility. 165 Wn.2d at 30. Similarly, in State v. Jackson, 150 Wn. App. 877, 884, 209 P.3d 553 (2009), there was no misconduct where the prosecutor detailed trial evidence and discussed credibility of police officer witnesses and argued that the officers reported their observations accurately and that testimony was "accurate and true."

-18-

Here, in closing argument, the prosecutor talked about evaluating M.E.O.'s credibility and pointed to the consistency of her statements:

> MR. BOSKA: One thing [M.E.O.] has been consistent about and has been consistent about all the way through is that Mr. Scannell touched her vagina inappropriately and had inappropriate contact with her. When you're evaluating the credibility of the report by Ms. Olsen, what else might show that she's manufacturing a story and coming up with something for court?
>
> . . . .
>
> If the idea is that she's trying to come up with something outrageous, why not say he did insert his fingers inside of her? She was very clear to say no, the fingers were mostly on my clitoris, they remained outside me.
>
> If she was being pressured into this or if she was trying to create some sort of false narrative, then how is that consistent with when she went to see [Kleiner]?
>
> . . . .
>
> All of this is consistent with her telling you what she remembers from real events that transpired in her memory. Jury instruction No. 1 will tell you—
>
> MS. SLOAN: Your honor, objection, vouching.

Like the prosecutorial comments in <u>Jackson</u>, <u>Allen</u>, and <u>Warren</u>, the closing argument here was based on evidence introduced at trial and went to credibility of the witness. Scannell's defense theory was that M.E.O. fabricated the incidents. The prosecutor responded by referring to evidence introduced at trial that it wanted the jury to consider in making its credibility determinations. No improper vouching occurred.

For these reasons, Scannell fails to establish prosecutorial misconduct. [4]

---

[4] Scannell also argues that cumulative error requires reversal. But Scannell has failed to establish multiple errors so we do not address this argument.

VI

Scannell argues that given his indigency, remand is required to strike the VPA. The State does not dispute Scannell's indigency and does not oppose remand for striking the VPA. The State also concedes remand is required to strike the DNA fee.

In 2023, the legislature added a subsection to RCW 7.68.035 that prohibits courts from imposing the VPA on indigent defendants as defined in RCW 10.01.160(3). LAWS OF 2023, ch. 449, § 1. In addition, the legislature eliminated the DNA fee entirely. LAWS OF 2023, ch. 449, § 4. Our courts have held that recent amendments to statutes governing LFOs apply to matters pending on direct appeal. State v. Ellis, 27 Wn. App. 2d 1, 16, 530 P.3d 1048 (2023).

We accept the State's concession and remand to strike the VPA and DNA fee. We otherwise affirm the conviction.[5]

_Mann, J._

WE CONCUR:

_Hazelrigg, A.C.J._          _Smith, C.J._

---

[5] During pendency of his appeal, Scannell filed multiple pro se motions. Scannell has moved to remand, compel arbitration, cease and desist, strike briefs, strike oral argument, discharge counsel, stay the appeal, and withdraw his statement of additional grounds (SAG) filed under RAP 10.10. We grant Scannell's motion to withdraw his SAG. We deny the remainder of Scannell's motions.